(C. D. 304)

LADOR, INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided March 21, 1940)

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Dallinger, Judge: These are suits against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on particular importations of music box Christmas-tree stands. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at the rate of 40 per centum ad valorem under paragraph 1541 (a) of said act as musical instruments, that rate having been reduced to 20 per centum ad valorem under the same paragraph by the Swiss Trade Agreement, promulgated as T. D. 48093; or, by amendment, at the rate of 35 per centum ad valorem under paragraph 353 of said act as articles having as an essential feature an electrical element or device.

A sample of the imported merchandise at bar was admitted in evidence as Collective Exhibit 1, and printed pictorial representations of the same were admitted as Illustrative Exhibit 2.

In addition to the exhibits, the plaintiff offered in evidence the testimony of a single witness, Bernard Felber, an employee of the plaintiff corporation. He testified that Exhibit 1 correctly represented the merchandise described in the invoice as contained in cases 1974 and 1975 covered by protest 978793–G, and represented by item or quality numbers III/2/50 and 00/2/28, respectively, and apparently described as number 199 on Illustrative Exhibit 2; that said merchandise is a spring motor, which is wound up by a key and also has a lever which starts and stops the playing of one of two tunes; that on the top of the music box is a metal holder in which a small Christmas tree is inserted and which is equipped with a set of three thumbscrews for holding the Christmas tree fast in place; and that at Christmas time a Christmas tree is inserted in said stand, but that after Christmas the stand can be used as a musical mechanism during the rest of the year.

Being interrogated as to the electric cable shown in the illustration of No. 200 Electrical Nickel-plated Christmas-tree stand, shown on Illustrative Exhibit 2, the witness testified as follows:

Q. What is the purpose of that electric cable?—A. You put an electric light on the tree, then you connect it with that part. You turn the switch on the wall, the tree turns around, and the lights go on.

Q. Then the big one plays with an electrical attachment to it?—A. * * * You take your lights, you buy them in the store for the Christmas tree, and connect it with that wire that is attached here. Then the tree will light up while the music box turns around. Otherwise, it is exactly the same thing. It comes in complete from the other side. All we have to do is to buy the lights.

Judge Tilson. It has nothing to do with the music part of it?

The Witness. That is right.

Judge KINCHELOE. That cord you have doesn't stop or start this thing, does it?

The WITNESS. No, not at all. There is one more switch on the big one to shut off the lights, if you want to.

Judge KINCHELOE. It has nothing to do with the operation of this music box?

The WITNESS. No, sir, the main item is the music box.

\*       \*       \*       \*       \*       \*       \*

By Mr. PLACE:

Q. If between the Christmas seasons, on the larger one, I remove the socket that holds the tree, and the electrical connection with the house outlet for the lights, will the music box operate independently?

\*       \*       \*       \*       \*       \*       \*

The WITNESS. Absolutely.

The witness then testified that the articles described in the invoice covered by protest 973690-G as item III/2/50 in case 1982 are correctly represented by the cut in Illustrative Exhibit 2, and that the merchandise described in the invoice covered by protest 978791-G as item 3/4/50 in case AL. 1960 is correctly represented by Exhibit 2.

On cross-examination the witness testified as follows:

X Q. You were asked that if you remove the screws that hold the Christmas tree, you can use it as a music box, and you answered you could?—A. Yes, sir.

X Q. And there is a piece of metal coming out of the middle of it, and that revolves?—A. Yes, sir.

X Q. That has nothing to do with the playing of the music, has it?—A. The music box is in here. I can put a plate on here, a cake plate for birthday parties. Then the whole thing goes around, the whole birthday cake goes around, but the music box remains identically the same.

X Q. How would you put a plate on that?—A. Just screw it in here.

X Q. What kind of a plate?—A. Metal plate.

X Q. The metal plate didn't come with it?—A. No.

X Q. And the only thing that came with it as imported, was this little cone that holds a Christmas tree?—A. Yes.

X Q. The arbor that comes up in the middle has nothing to do with the music box?—A. It connects with the music box, to turn around. \* \* \*

X Q. Has it anything to do with the playing of the music?—A. It surely has.

X Q. If you took that out, would it still play music?—A. Yes.

X Q. If you entirely removed the arbor, it would play music, would it not?—A. Yes, as long as the instrument is there.

On redirect examination the witness testified in part as follows:

R. Q. When I release the trigger to allow the music to play, this central shaft upon which the tree holder is mounted revolves, doesn't it?—A. Yes.

R. Q. So the mechanism that the trigger releases, causes the cylinder upon which the tunes are recorded, to move, does it not?—A. Yes.

R. Q. What imparts the motion to the tree socket?—A. There is a special gear inside connected with the music box, but you could take this out.

R. Q. You could take that central shaft out?—A. Yes, sir.

R. Q. It is geared to the music?—A. Right.

Upon this record counsel for the plaintiff in their brief filed herein contend that the music box Christmas-tree stands in question are *eo nomine* described in the Swiss Trade Agreement, T. D. 48093,

69 Treas. Dec. 74 (at page 86) under paragraph 1541 (a) of the Tariff Act of 1930 by the following language: "Music boxes and parts thereof, not specially provided for, 20% ad val."

On the other hand counsel for the Government in his brief filed herein contends that while undoubtedly the merchandise is a music box it is something more than a music box, to wit, a music box with an added feature making it adaptable for use as a Christmas-tree stand.

In our opinion the contention of the Government is well founded. We believe that the decision in the case of *United States* v. *Sutherland International Despatch et al.*, 21 C. C. P. A. 264, T. D. 46790, is here controlling. Therefore all claims of the plaintiff are hereby over-ruled and judgment will be rendered accordingly.