UNITED STATES *v.* CODY MANUFACTURING CO., INC., ROHNER GEHRIG & CO., INC. (No. 4875)[1]

United States Court of Customs and Patent Appeals, February 21, 1957

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Joseph E. Weil*, trial attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for appellees.

[Oral argument December 4, 1956, by Mr. FitzGibbon and Mr. Glad]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal by the Government from the judgment of the United States Customs Court, First Division, Abstract 59750, sus-

[1] C. A. D. 639.

taining the importers' protest and holding that the merchandise in controversy should be classified as parts of music boxes under paragraph 1541 (a) of the Tariff Act of 1930, as modified by Presidential Proclamation, T. D. 48093, rather than as dolls under paragraph 1513 of that Act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, and Presidential Proclamation, T. D. 52857.

The pertinent paragraphs, as so modified, are as follows:

The shipment consists of four different types of merchandise; namely, 3000 musical movements, 3000 figurines, each about two inches high, referred to in the invoice as dolls, 3000 brass tubes, and 3000 blocking screws. These items do not, as imported, constitute unitary devices but are distinct and disconnected. After importation they are assembled with certain domestic articles to form units which are described by the Customs Court as follows:

The music box, with which we are concerned, consists of a plywood base, approximately 4 inches in diameter, and a so-called "cut-out shell" (metal case), that fits into the wooden base. Those articles, which are of domestic manufacture, serve as the means for assembly of the four imported items into the complete music box. The "musical movement" * * * is fastened to the plywood base with screws. The movement, per se, consists of a metal cylinder, with minute pegs projecting from the surface. As the cylinder revolves, small metal teeth strike the pegs, thereby reproducing musical tones. Permanently attached to the metal frame, on which the "musical movement" is compactly arranged, is a metal platform, approximately three-eighths of an inch square, which, by means of a metal arm, contacts a special gear attached to the metal cylinder. The "brass tube" * * *, three-fourths of an inch in length and one thirty-seconds of an inch in diameter, is soldered to the "cut-out shell" in such a manner that the tube extends upward through the center of the shell * * *. The "doll" * * * is a miniature female figure, 2 inches high, composed of plastic material, and garbed to simulate a ballet dancer. Extending downward from the torso, and permanently affixed thereto, is a pointed metal shaft, 2¾ of an inch long. The metal shaft fits into the brass tube * * *, so that the loosely hanging legs of the plastic figure barely touch the top of the metal shell, which is the housing for the movement * * *. The blocking screw * * * is fitted to the lower end of the pointed metal shaft from which the plastic figure is suspended. A hollow trans-

parent plastic covering, also of domestic manufacture and made to fit over the dancing figure and into the cut-out shell * * *, completes the finished music box * * *. In its completed form, the music box measures approximately 4 inches in diameter and about 6 inches in height.

The music box is operated by winding with a key that projects through the bottom of the wooden base. When the movement is wound and released, musical sounds or melodies are emitted, and the metal platform, that is attached to a gear connected with the musical movement, is raised and lowered. This movement of the metal platform causes the metal shaft, to which the plastic figure is attached, to move and whirl in such a manner as to give the effect of a dancing figure. All of the imported items, as ultimately assembled with those of domestic manufacture, are essential to complete the commercial entity, recognized in the trade as a music box.

The musical movements were classified by the collector as parts of music boxes under paragraph 1541 (a), as modified, and are not in dispute here. The remaining items were classified as an entirety as dolls under paragraph 1513, as modified. The importer protested the latter classification, successfully claiming that all the items involved were parts of music boxes. The Government appeals from the decision of the Customs Court, contending that the collector's classification was proper. Accordingly, the question here is whether the figurines, blocking screws, and brass tubes properly constitute "parts of music boxes" or "dolls."

The record of an earlier case, *Cody Manufacturing Co., Inc., Rohner Gehrig & Co., Inc.* v. *United States*, 33 Cust. Ct. 377, Abstract 58428, has been incorporated into the instant record. Involved there were figurines similar to those here, but not brass tubes or locking screws. The figurines were held classifiable as dolls under paragraph 1513, as modified, *supra*. In its decision in the instant case, the Customs Court said, with respect to its earlier decision:

> The case of *Cody Manufacturing Co., Inc., et al.* v. *United States*, 33 Cust. Ct. 377, Abstract 58428, the record in which was incorporated herein, is distinguishable from the present one. The cited case related only to one item, a plastic figure like that involved herein * * *. The present case, involving, as it does, all of the mechanical features of a particular style of music box, including the plastic figure attached to a metal shaft, presents a different situation from that which was before us in the *Cody Manufacturing Co., Inc., et al.* case, *supra*. Hence, the reasoning followed and the conclusion reached therein do not apply herein.

We are unable to see that the foregoing presents a valid distinction so far as the plastic figurines are concerned. Whether those figurines are dolls or parts of music boxes appears to be a question which is wholly independent of whether the brass tubes and blocking screws are included in the same shipment. It is to be noted that the latter parts were invoiced separately and not as constituting units with the plastic figurines.

Essential to the disposition of this appeal is the meaning of the term "music box" as used in paragraph 1541 (a). There is no con-

tention that the term has a commercial meaning differing from its common meaning.

In its decision in the incorporated case, the Customs Court made the following statement with respect to the meaning of that term:

The term, "music box," as defined by leading dictionary authorities, is a case or a cabinet, housing a mechanism that plays tunes or melodies automatically. Specifically, Webster's New International Dictionary defines "music box" as "a box or case containing apparatus moved by clockwork so as to play certain tunes automatically." Funk & Wagnalls New Standard Dictionary embodies the definition of "music box" under the word "musical," wherein "m. box" is defined as "a case or cabinet containing a mechanism contrived to reproduce melodies, and frequently possessing additional musical effects. The notes are reproduced by the vibrations of steel teeth struck by minute pegs projecting from the surface of a revolving cylinder."

The above definition from Webster's New International Dictionary was also quoted by this court in *Thorens Inc.* v. *United States*, 31 C. C. P. A. (Customs) 125, C. A. D. 261, with a statement to the effect that the term "music box" is not ambiguous, and that extraneous aids could not properly be resorted to in order to determine its meaning.

Accordingly, we accept the foregoing definitions of the term "music box." It remains to be determined whether the figurines, brass tubes, and blocking screws are "parts of" such a box within the meaning of paragraph 1541 (a) of the Tariff Act of 1930.

Both this court and its predecessor, the United States Court of Customs Appeals, have frequently had occasion to pass upon the meaning of the words "parts thereof" as applied to various devices named in the tariff acts.

In *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T. D. 34249, it was held that music rolls were parts of the player piano with which they were designed to be used since the instrument could not function *as a player piano* without them, although it might be played by hand.

In holding lamps and horns to be parts of automobiles in *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T. D. 41434, the court said:

We think lamps and horns are essential and necessary parts of automobiles and that automobiles can not be efficiently, safely or properly operated without them. * * *

In *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673, it was held that glass photolithographic camera screens were parts of cameras since they were "essential parts of these cameras and without which they *cannot function as such.*" (Italics ours.)

In holding certain belts to be dutiable as parts of paper making machines in *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust.

Appls. 285, T. D. 42872, the court stated the applicable principle as follows:

So it may be said that whether an article is an accessory or an integral part of a machine depends, to a considerable extent, upon its use. If its use is casual, auxiliary or optional it is an accessory. If, however, it is used as an essential part, and if the machine is *incapable of performing its ordinary and proper functions without it*, it will be considered, at least for tariff purposes, as an integral part of of the machine. (Italics ours.)

In *Stoeger* v. *United States*, 15 Ct. Cust. Appls. 291, T. D. 42472; it was held that 32-shot magazine drums for pistols were parts thereof, even though the pistols were already equipped with 9-shot magazines. There the court said:

It seems to us that the magazine drum is as much a part of the pistol as is the ordinary magazine which comes inserted in the same. * * * The contention of the importer that the drum magazines are merely accessories and that the pistol is complete without the use of the same may be answered by saying that if they are the kind of pistols represented by catalogue exhibits, "original German Luger (parabellum) automatic pistols" and "Mauser self-loading automatic pistols" they would have to contain some sort of magazine or holder for the shells needed in the action of repeatedly shooting and reloading.

In holding that certain wooden tripods were not parts of cameras, in *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, this court said:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article*. * * * (Italics quoted.)

The mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other. * * *

It is to be noted that the cameras and tripods involved in the *Willoughby* case were especially designed to be used together; that the tripods were provided with screws adapted to be received in sockets in the cameras; and that the cameras "must, in order to be properly used by a photographer, have some adjustable and rigid support."

The case of *United States* v. *Carl Zeiss, Inc.*, 24 C. C. P. A. (Customs) 145, T. D. 48624, involved several types of finders for photographic cameras. It was held that some of them were necessary to the functioning of the cameras, as such, and were therefore camera parts, while others which were not essential to the operation of the camera, but merely served the convenience of the operator, were not such parts.

In the recent case of *United States* v. *Antonio Pompeo*, 43 C. C. P. A. (Customs) 9, C. A. D. 602, the question was presented whether certain superchargers for automobile engines were parts of such engines. The evidence showed that "once installed, the supercharger was an integral, constituent, component part, without which the

motor will not function," and it was accordingly held that the super-chargers were parts of the engines, even though the engines could be operated before they were installed. It was expressly held that the superchargers met the definition of "parts" established in the *Willoughby* case; namely, that without them the article to which they were joined could not function *as such article.*

The foregoing authorities are uniform in applying the rule that an element which is not essential to the operation of an article for its intended purpose is not a part of that article.

The intended purpose of music boxes, with which we are primarily concerned here, as is obvious from the name itself, and as shown by the definitions quoted, is to play music, and it would seem that only those elements which are essential to the production of that result can properly be considered parts of music boxes. The plastic figurines here contribute nothing whatever to the playing of the music. The music boxes play exactly the same tune in the same way whether the figurines are attached to them or not.

It is a matter of common knowledge that music boxes are fre-quently associated with various toys and other devices. Thus, the *Thorens* case, cited above, involved a music box associated with a toilet paper dispenser, while the case of *Lador, Inc.* v. *United States;* 4 Cust. Ct. 123, C. D. 304, involved such a box associated with a stand for Christmas trees. It is evident, however, that while such combinations frequently result in unitary devices, those devices are not necessarily properly termed music boxes, and it was so held in both the *Thorens* and *Lador* cases.

It is evident that the *Thorens* case is closely in point since it also related to a combination device for producing music, and performing an additional function. The Customs Court, in its decision in the instant case, sought to distinguish the *Thorens* decision on the ground that the toilet tissue dispenser there was an operative device apart from the music box, whereas here the figurines, tubes, and blocking screws are "utterly worthless" unless they are associated with the music box. However, as shown by the decisions cited above, the determining fact is not whether the alleged part can be used without the article, but whether the article can be used for its intended purpose without that part. It is obvious that none of the finders involved in the *Zeiss* case had any utility apart from cameras, and the same was apparently true of the specially designed tripods involved in the *Willoughby* case, but it was nevertheless held that the tripods, and some of the finders, were not parts of cameras.

The Customs Court also stated that the articles in the *Thorens* and *Lador* cases were utilitarian, while those in the instant case are amuse-ment devices. We are of the opinion, however, that that distinction has no material bearing on the issue here presented.

The present case is quite similar to *United States* v. *Adler-Jones Co.*, 20 C. C. P. A. (Customs) 397, T. D. 46231, concerning a manikin with a concealed mechanism which caused the head and body to rock back and forth. It was there held that such articles must be considered as entireties and as so considered could not properly be classified as machines. While it is true the mechanism in that case was said to be "but a small part" of the figure, in the *Thorens* decision, wherein the *Adler-Jones Co.* case was discussed, it was held that fact was not controlling, the court adding:

> It will be observed that the quoted language did not hold that the fact that the mechanical device was a small portion of the article controlled our decision. The important point of our decision [in the *Adler-Jones Co.* case] was that the article must be considered as a whole, and we held that when so considered it did not meet the definition of a machine as that term is commonly used and understood.

Similarly, the instant articles do not meet the definition "music box."

A further indication that the complete devices at bar are not properly described as music boxes is found in the following testimony of the importers' single witness, William Cohen:

> R. Q. Do you know what item that is known as, as Illustrative Exhibit 6, in the trade?
> A. As a dancing doll.
> R. Q. I am referring now to Exhibit 6, this item that you assemble and sell, what is it then?
> A. There isn't any particular classification.
>
> \*          \*          \*          \*          \*          \*          \*
>
> Judge Wilson: What do you call that?
> The Witness: In our trade we call it a number.
> R. Q. Is it known as a music box?
> A. That is right.

It will be seen that while the witness finally testified, in answer to a leading question, that the entire device is known as a music box, his first statement was that it was known as a dancing doll.

For the reasons given, we are of the opinion that the figurines, brass tubes, and blocking screws are not properly classifiable as parts of music boxes.

With respect to the question whether the figurines are properly classifiable as dolls, we agree with the following statement of the Customs Court in its decision in the incorporated case:

> Counsel for plaintiffs argues, in his brief, that the merchandise in question does not respond to the tariff classification of "dolls" in that "it could not be used by children as a toy because of the spindle or spike which extends down from the body of the figure," and also because "the very presence of this spike or spindle makes the Exhibit 1 something more than a doll even if the remaining part of the exhibit were to fall within the tariff definition of doll."
>
> The contentions are without merit. First of all, the tariff provision for dolls, unlike the one for toys, is not limited to merchandise chiefly used for the amuse-

ment of children. As stated by the Court of Customs and Patent Appeals in the case of *S. E. Laszlo* v. *United States,* 27 C. C. P. A. (Customs) 152, C. A. D. 76, "paragraph 1513 of the Tariff Act of 1930 differs greatly from previous provisions in other tariff acts with relation to dolls, and it would seem that under said paragraph all dolls, whether toys or not, are included there." In our decision in the case of *Barum Co. Inc.* v. *United States,* 30 Cust. Ct. 414, Abstract 57251, we held that "the *eo nomine* provision for 'dolls' in paragraph 1513 is generic in scope, as it embraces all sorts of dolls including those that are toys." The substance of dictionary definitions, in the light of the foregoing judicial pronouncements, is that a "doll" is a puppet, representing a person, for use either in play or as an ornament. Webster's New International Dictionary and Funk & Wagnalls New Standard Dictionary.

The miniature plastic figure in question is a doll, within the cited legal and dictionary authorities. In appearance and in use, it is representative of a ballet dancer. The metal shaft, affixed thereto, is an appurtenance that dedicates the article to its exclusive use as a particular kind of a doll, i. e., a dancing doll, with a music box.

As above noted, the collector classified the brass tubes and blocking screws, together with the figurines, as dolls. It is well settled that the classification made by the collector must stand unless the importer establishes not only that such classification is incorrect, but that the classification contended for by the importer is correct. *United States* v. *Adler-Jones Co., supra,* and *Davies Turner & Co.* v. *United States,* 40 C. C. P. A. (Customs) 193, C. A. D. 517. Since the brass tubes and blocking screws do not contribute in any way to the production of music, we are of the opinion that appellees have failed to sustain their contention that those items should be classified as parts of music boxes and it is accordingly unnecessary to consider whether they were properly classified as dolls.

The decision of the United States Customs Court is *reversed.*

JACKSON, J., Retired, recalled to participate herein in place of COLE, J., absent because of illness.

RICH, Judge, dissenting.

It seems clear to me from the record that, as the Customs Court held, the particular thing assembled in this country from the imported parts plus other parts of domestic origin, and for which the particular articles were imported, is a type or style of music box; that the imported figurines, brass tubes and blocking screws are essential parts of this kind of music box, without which it is not complete and cannot perform its intended function; and that the imported parts involved on this appeal are exclusively for use in and are commercially worthless apart from use in this kind of music box.

On this basis, it is my opinion that the merchandise, subject of the protests before us, should be classified as parts of music boxes, under paragraph 1541 (a), and the decision of the Customs Court affirmed.

The essential difference between my view and that of the majority

is based on my refusal to restrict the term "music box" to that part of the assembled article which produces musical sounds. I believe the common meaning of the term encompasses and is an apt description of the complete commercial articles before us in this case, made with the imported parts. It is not to be expected that lexicographers would undertake to define every kind of music box, including those as yet unknown, wherefore I do not feel we should restrict ourselves in this situation by dictionary definitions. It is said that the tariff act is written in the language of commerce.

I regard the "dancing dolls," the 2 inch, dressed figurines with swinging legs having 2¾ inch metal shafts extending downwardly from their torsos, as essential *parts* of an article the primary function of which is that of a music box for which reason I believe that the imported merchandise is not comparable to the completed articles involved in the *Thorens* case wherein the article was held to be "essentially a toilet roll holder" and not a music box and the *Lador* case in which the article was primarily a Christmas tree stand, the music box works incorporated therein being incidental to the main function in both of those cases. *Those cases did not involve the importation of parts;* in both, the completed article was imported. The doll is, moreover, activated or caused to dance by additions to the musical movements in the form of an added gear, a pivoted lever and a plate attached thereto on which the doll's shaft rests and the doll would not dance apart from the music box works. The "dancing doll" is not, therefore, a complete article in itself and the music box a mere incident thereto, as the Government contends. The entity is a music box having a dancing doll as an integral feature. I therefore feel the *Thorens* and *Lador* cases are not particularly pertinent and certainly not controlling, as they apparently were deemed to be in the earlier Customs Court opinion in *Cody Manufacturing Co., Inc., et al.* v. *United States*, 33 Cust. Ct. 377, Abstract 58428, involving an importation of the "dancing dolls" alone. Complete music boxes were not imported here.

After a careful consideration of all of the cases cited in the majority opinion which specifically deal with the importation of parts of other entities, I am of the opinion that they give greater support to the view that the parts involved here are parts of music boxes, and *essential* parts thereof having no other use, than to the contrary view. This is because the complete article for which the parts involved here are intended, which I think is accurately described as "a dancing doll music box," is not finished or operative until the figurine, the tube and the blocking screw are assembled therein. The tube is soldered into the metal case for the music box in a vertical position, the shaft of the figurine is inserted in it so as to rest on the plate oscillated by the musical movement and the so-called "blocking screw" (which in

reality is a collar having a set-screw) is attached to said shaft under the case to prevent its withdrawal. Thus all of these parts are essential to the operation of this single entity. From this point of view, it is my opinion that the law of the cases involving parts supports the decision of the Customs Court in this case. I also find in the facts of many of those cases a close parallel to the factual situation here, at least according to my view of the facts.

The majority opinion, after considering several cases on parts concludes that "the determining fact is * * * whether the article can be used for its intended purpose without that part." In the *American Steel & Copper Plate Co.* case, cited by the majority, the predecessor of this court said, after discussing several cases:

An examination of these cases will disclose, we think, that the controlling feature in each of the cases cited was a consideration of the question whether the particular articles imported were, or were not, essential to the operation or use of *the particular thing of which they were said to be parts*, and, in the absence of which the thing in question was not capable of the use for which *it* was intended. In each case cited, the article involved was entirely able to function and perform its original purpose without the thing imported.

But when the thing imported is essential to the functioning and use of the article of which it is said to be a part, a much different condition arises. (Emphasis added.)

We are dealing here not with figurines or "dolls" alone but also with brass tubes and blocking screws. The Government contends these three imports are an entirety dutiable as dolls. The majority sustains this classification as to tubes and blocking screws only on the ground that appellant has failed to show it is wrong. I think appellant *has* shown the classification to be wrong by the testimony explaining what the tubes and screws are used for (and I do not know what further showing the importer could have made) which clearly establishes that they are parts of music boxes and not "dolls."

I feel that the testimony of the single witness, taken as a whole, and including the record in the incorporated case, clearly shows that the complete article made with the imported parts is a "music box." It was not said just once, in answer to a leading question. It was repeatedly stated to be a music box and the witness, an officer of the importer, stated that his company was a manufacturer of music boxes and that "Anything in our business is typified as a music box."

The figurines, tubes and blocking screws were classified as an entirety—quite properly, I believe—because they were designed to be assembled as parts of *a complete article of commerce* and the record shows that the importer intended to so use them. *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T. D. 41232, stands for the proposition that, under these circumstances, imported parts will be considered for tariff purposes as entireties and assessed with duty *according to the entity they represent. Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C. D. 1619.

The musical movements imported in the same shipment, and in the same quantity as the other items, were classified as parts of music boxes in consequence of which the protest was limited to the other items. But the real question here is whether the *entire shipment* should be treated as an entirety, which is the result achieved by sustaining the protest, as the Customs Court did. That is the way the Government brief states the issue.

Applying the doctrine of entireties, which is a rule of classification, what is the entity or complete article of commerce? As to the musical movements, the collector held it is a music box. How can it be something else as to the other parts destined and intended for use in the same entity? Is the brass tube or the blocking screw any part of any kind of a doll? I say they are not because the record shows that the entity they went into was not a doll by any stretch of the imagination but was a type of music box.

The anomaly which results from taking the narrow view as to what a "music box" is, which has been adopted in the majority opinion, is that the musical movements went into one entity while the remaining parts went into a different entity, whereas we have before us in the exhibits in this case but a single entity. If it is a music box as to the movements, it is a music box for all the parts. We should not be misled by the happenstance that the classification of only part of the shipment is the subject of protest.

It will be apparent, on reading the opinions of the Customs Court in this case (decided March 8, 1956) and in the earlier case involving the "dolls" alone (decided October 21, 1954), that I am of the opinion that the second thoughts of the Customs Court (the same judges having decided both cases) are on sounder ground than those expressed in the earlier case. For these reasons I would affirm in this case.