(*C.D.* 2688)

F. B. Vandegrift & Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided May 23, 1966)

*Allerton deC. Tompkins* for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Arthur H. Steinberg,* trial attorney), for the defendant.

Before RAO, FORD, and DONLON, Judges; DONLON, J., concurring

RAO, Chief Judge: The protests here involved, which have been consolidated for purposes of trial, relate to several importations of miniature artificial Christmas trees, decorated with small colored glass ornaments, which revolve upon bases containing music box mechanisms. These articles were classified by the collector of customs at the port of entry in paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, or by Presidential Proclamation No. 3468, 97 Treas. Dec. 157, T.D. 55615, supplemented by Presidential Proclamation No. 3479, 97 Treas. Dec. 430, T.D. 55649, as, respectively, articles of metal, wholly or in chief value of aluminum, not specially provided for, or as articles wholly or in chief value of other base metal, not specially provided for, with the consequent assessment of duty at the rate of 19 per centum ad valorem or at the rate of 20 per centum ad valorem, respectively.

It is the contention of plaintiff herein that the protested items are more specifically embraced by the provision in paragraph 372 of said act, as modified by said sixth protocol or by said T.D. 55615, as supplemented, for machines, not specially provided for, which are therein made dutiable at the rate of 11½ per centum ad valorem or at the rate

of 10½ per centum ad valorem, depending upon the date of entry. The competing provisions are set forth as follows:

Paragraph 397 of the Tariff Act of 1930, as modified by said sixth protocol—

Articles or wares not specially provided for, whether partly or wholly manufactured:

  \*     \*     \*     \*     \*     \*

    Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*     \*     \*     \*     \*     \*     \*

        Other, \* \* \*_____ 19% ad val.

Paragraph 397 of said act, as modified by said Presidential Proclamation No. 3468, as supplemented, *supra*—

Articles or wares not specially provided for, composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead, tin or tinplate), partly or wholly manufactured, not plated with platinum, gold, or silver, and not colored with gold lacquer:

  \*     \*     \*     \*     \*     \*     \*

    Other, composed wholly or in chief value of base metal other than iron, steel, copper, brass, bronze, zinc, or aluminum:

\*     \*     \*     \*     \*     \*     \*

        Other (except \* \* \*)_____ 20% ad val.

Paragraph 372 of said act, as modified by said sixth protocol—
Machines, finished or unfinished, not specially provided for:

  \*     \*     \*     \*     \*     \*     \*

    Other (except \* \* \*)_____ 11½% ad val.

Paragraph 372 of said act, as modified by said T.D. 55615, as supplemented:

Machines, finished or unfinished, not specially provided for:

  \*     \*     \*     \*     \*     \*     \*

    Other (except \* \* \*)_____ 10½% ad val.

Samples of the different styles of trees covered by the involved invoices are in evidence as plaintiff's collective exhibits 1 and 2, respectively. Exhibit 1 was stated to be representative of the item invoiced as "1070B X'mas Tree Ornament" in protest 63/12142 and in protest 63/19500 except that the base has been loosened, so that the wooden cardboard veneer bottom may be removed to expose the

interior. As imported, the tree and the base were not attached but were otherwise completely assembled. Plaintiff's exhibit 2 was stated to be representative of item number 171 in protest 63/19565 and of item number "171-T" [sic] in protest 63/19586. It is in its condition as imported except that the base had been taken apart for examination and resealed with Scotch tape.

Also in evidence as plaintiff's illustrative exhibit 3 is a music box mechanism which, the testimony shows, is identical in operation with the bases of exhibits 1 and 2 except that it is key wound and possibly emits a different tune. The various components of plaintiff's illustrative exhibit 3, in a knocked-down condition, were introduced into evidence as plaintiff's collective illustrative exhibit 4.

All of the exhibits were identified by plaintiff's witness Philip Greenspan who is a partner and general manager of the firm of Exhibit Sales Co., the real importer of the merchandise at bar. When questioned on cross-examination as to what, in his opinion, was the main feature of the subject merchandise, he stated that he believed it to be the revolving action of the tree.

The only other witness in the case, also called on behalf of plaintiff, was James Capaldi who, for 21 years, has been employed by Exhibit Sales Co. as a maintenance and repairman. It appears from his testimony that he is thoroughly familiar with the mechanisms of the imported articles by reason of having been required to take them apart on occasion for repairs. To demonstrate how the article in issue functions, Mr. Capaldi assembled the tree and base of plaintiff's exhibit 2 in the following manner: After spreading the branches of the tree and inserting the trunk in the base, he turned the base against the tree, and when he released the device, the tree began to revolve slowly as music emanated from the base. The witness explained that the tree actually functions as a key in winding up the music box— in storing energy into the main gearbox. When the tree is released, a cylinder in the mechanism begins to roll and steel pins on the cylinder vibrate reeds, thus producing sound. At the same time, an inside gear turns smaller gears which turn a butterfly, or balancing wheel, which, according to the witness, is the main component for controlling the speed of the device. As the spring unwinds, the key or the tree, as the case may be, revolves and the various gears turn as they intermesh. He further explained that the base, as illustrated by plaintiff's exhibits 3 and 4, contains one spring, seven gears, and the key lever, and after the device is wound, it revolves and otherwise functions automatically. It is the releasing of the tension of the spring which causes all elements of the article to operate, and motion is transmitted from the spring to the various interlocking gears.

In the opinion of this witness, these revolving trees have been referred to as machines, gadgets, or mechanical devices, and he believed these to be proper expressions because he considers anything that moves or has projective motion to be a machine.

It is the position of plaintiff that, despite the simple nature of the articles at bar, they are well within the category of those devices which have been held to be machines for tariff purposes, and numerous examples of such articles have been called to our attention in the brief filed in its behalf. We note in particular the following articles which have been judicially determined to be machines:

Jet-operated rotary lawn sprinklers in *The Durst Mfg. Co., Inc.* v. *United States*, 50 CCPA 56, C.A.D. 820.

Hand-activated pulley light mechanisms in *Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786.

Hand-operated paper hole punches in *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756.

Aneroid barometers in *United States* v. *L. Oppleman, Inc.*, 25 CCPA 168, T.D. 49271.

Hand counters in *United States* v. *Endlein & Schmidt et al.*, 22 CCPA 108, T.D. 47082.

Razor blade sharpening devices in *United States* v. *Guth Stern & Co., Inc.*, 21 CCPA 246, T.D. 46777.

Shoe-stretching forms in *United States* v. *Laing Harrar & Chamberlin*, 21 CCPA 235, T.D. 46763.

In considering the much litigated and often perplexing question of what constitutes a machine for tariff purposes, our appellate court has indeed rejected the view that simplicity in function or mode of operation is of determining consequence. While declining to define the term "machines" for all purposes, for the reason that there is no precise definition into which all "machines" will comfortably fit, and being of opinion that the question remains one of common meaning to be applied upon the basis of the facts in each case, the court has, nevertheless, adverted with approval to the definition contained in the following excerpt from its decision in *Nord Light, Inc.* v. *United States, supra:*

A common meaning of the word "machine," found in the dictionaries which we referred to in the *IDL* case, supra, is a device, which may be either simple or complex, whose function is to increase the intensity of an applied force, or to change its direction, or to change one form of motion or energy into another form. Cf. The Columbia Encyclopedia, 2d Ed.

If we are to be guided to our conclusion in the instant case by the character of the music box component of the device in issue, we think it obvious that it must be deemed a machine within the foregoing concept. It consists of a repository in which energy stored up in a

wound spring, when released, converts to motion which causes gears to turn and a cylinder to revolve and musical tones to be emitted. Standing alone, a mechanism of this kind, with its interrelated parts activated by an applied force, would seem to fall within every man's concept of what a machine is. But we cannot agree that this alone solves the problem with which we are here confronted. The item which has been imported and which forms the subject of the instant controversy, as pointed out by counsel for defendant, consists of something more than the mechanical elements which cause a tune to play and a tree to revolve. In its imported condition, it is not simply a music box. It is a revolving Christmas tree on a music box stand, and notwithstanding the refusal of the witness Greenspan to concede that the predominant feature of the importation is the decorated tree, we perceive no other *raison d'etre* for this article with its tinseled branches and its gaily colored Christmas ornaments than its primarily decorative function as a traditional aspect of the Christmas season. In any event and at the very least, it is neither a music box on the one hand nor a Christmas tree on the other.

In the respect that the articles at bar are urged to be more than machines, we find particularly relevant the following two cases which have been called to our attention by counsel for the defendant:

*United States* v. *Adler-Jones Co.*, 20 CCPA 397, T.D. 46231, wherein a manikin form of the cartoon character "Mr. Jiggs," equipped with a concealed mechanism which, when wound, caused the body and head of the figure to gyrate, apparently intended to be used for display purposes, was held not to be a machine for tariff purposes, the court stating:

Without entering into any lengthy discussion of the issue, we state that, while inclined to agree with the trial court that the figure is not properly classifiable under said paragraph 368(a) by reason of any language therein used, we, at the same time, find ourselves unable to agree that this is such a machine as is provided for in paragraph 372, *supra*. It is not a machine in the sense of that paragraph. The definition given in the *Simon, Buhler & Baumann* case, *supra* [8 Ct. Cust. Appls. 273, T.D. 37537], is quite broad, and it must be applied under the limitations made necessary by the facts of any case in which its application is sought. Entirely applicable in that case because of the nature of the article at issue, for that very reason it is not applicable here.

The mechanical device which causes the swinging or rocking of the body and head is but a small part of the figure and affects only a portion thereof. The article, we think, must be considered as a whole, no language of the tariff act being found which suggests any other method of treatment.

When so considered we do not think the figure meets the definition of "machine" as that term is commonly and commercially used and

understood and as it was applied in the *Simon, Buhler & Baumann* case, *supra.*

*Thorens, Inc.* v. *United States*, 31 CCPA 125, C.A.D. 261, in which a toilet paper dispenser, with an attached music box mechanism, was held not to be a machine for tariff purposes, for the reason that when considered as a whole, it was something more than a music box and, therefore, something more than a machine. In commenting upon the *Adler-Jones* case, *supra*, particularly the language hereinabove quoted therefrom, the court stated:

It will be observed that in the quoted language we did not hold that the fact that the mechanical device was a small portion of the article controlled our decision. The important point of our decision was that the article must be considered as a whole, and we held that when so considered it did not meet the definition of a machine as that term is commonly used and understood.

So in the case at bar when the article involved is considered as a whole it does not meet the definition of a machine. The article is essentially a toilet roll holder, dedicated to that use, and combined with it is a music box designed for the entertainment of the person utilizing the toilet roll holder and operable only when the holder is manipulated by its user.

In the case of *Lador, Inc.* v. *United States*, 4 Cust. Ct. 123, C.D. 304, it was held that a music box Christmas-tree stand, intended for use as a base for a Christmas tree, was "something more than a music box, to wit, a music box with an added feature making it adaptable for use as a Christmas-tree stand."

The *Lador* case was cited with evident approval in *United States* v. *Cody Manufacturing Co., Inc., Rohner Gehrig & Co., Inc.*, 44 CCPA 67, C.A.D. 639, wherein, in determining that certain figurines were not parts of music boxes within the purview of paragraph 1541(a) of the Tariff Act of 1930, as modified by Presidential proclamation, T.D. 48093, the court distinguished between music boxes, the primary purpose of which is to play music, and other devices in which the musical mechanism is a subordinate feature, and stated:

It is a matter of common knowledge that music boxes are frequently associated with various toys and other devices. Thus, the *Thorens* case, cited above, involved a music box associated with a toilet paper dispenser, while the case of *Lador, Inc.* v. *United States*, 4 Cust. Ct. 123, C.D. 304, involved such a box associated with a stand for Christmas trees. It is evident, however, that while such combinations frequently result in unitary devices, those devices are not necessarily properly termed music boxes, and it was so held in both the *Thorens* and *Lador* cases.

If the devices which were involved in the foregoing cases are something more than music boxes because the musical mechanism does not further their principal function, it follows logically that they are also

something more than machines since, in the final analysis, it is the music-producing element which constitutes the mechanical feature upon which their character as machines, if they be such, must depend. However, inasmuch as each of these articles derives its name and description from the utilitarian function which it fulfills and the music which it emits is really only incidental to that function, it is obviously inappropriate to allow the subsidiary component of the entity to become the determinant of what the article really is.

We are not dissuaded from our conclusion that the subject articles are more than machines by reason of the fact that, in addition to playing music, the base also causes the tree to revolve. Not only is this simply another feature of one of the components of the entire unit, but the turning of a spindle as the result of the unwinding of a spring to which it is directly related would not, in our opinion, constitute such mechanical action as would fall within the definition to which we have heretofore alluded. As this court has observed on several occasions, not every mechanism which contains a spring is *ipso facto* a machine within the intendment of the tariff provision therefor. *General Systems Service, Inc.* v. *United States*, 39 Cust. Ct. 506, Abstract 61376; *Border Brokerage Company* v. *United States*, 41 Cust. Ct. 236, C.D. 2046.

In view of the foregoing circumstances, we are of opinion that the subject revolving musical Christmas trees do not fall within the category of machines for tariff purposes. All claims in the protests are, therefore, overruled.

Judgment will be entered accordingly.

### CONCURRING OPINION

Donlon, Judge: I concur that plaintiff's proofs do not establish the protest claim.

When, at the request of the Chief Judge, I appeared specially in this case to write an opinion for the division, I included in my opinion a discussion of the precedents which led me to conclude that the simple revolving and music playing device in the tree at bar does not make it, for tariff purposes, such a machine as paragraph 372 enumerates. In view of the majority opinion that it is a machine, and "more than a machine," I do not encumber the record now with a repetition of that discussion. I am of opinion that it is not a machine.

Without either affirming the collector's classification or considering what, among possible classifications that are not at issue in the pleadings, might be applicable to the imported article, but solely on the ground that plaintiff's proofs have not established its protest claim that the article at bar is a machine, I join the judgment order overruling the protest.