(C. D. 1604)

BERG IMPORTING CO.
JAMES LOUDON & CO., INC.} *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 31, 1954)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiffs.

*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: The merchandise which is the subject of this controversy consists of certain ornamental wood carvings imported at the same time as, and in the same shipment with, movements and cases for cuckoo clocks. The collector of customs at the port of

entry looked upon each movement and case, and the particular set of wood carvings bearing the same invoice item number, as an entirety—a cuckoo clock in a knocked-down condition. Invoking the provision for clocks in paragraph 368 (a) of the Tariff Act of 1930, the collector assessed duty upon the entirety at the ad valorem rate of 65 per centum and the specific rate appropriate to the value of the unit, in accordance with subdivisions (1) and (2) of said paragraph 368 (a).

The collector's action with respect to movements and cases is not here directly in issue. It is the contention of plaintiffs that the wood carvings are separately dutiable at the rate of 16⅔ per centum ad valorem, pursuant to the provisions of paragraph 412 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T. D. 52373, supplemented by Presidential proclamation, T. D. 52476, as manufactures of wood. As a consequence of the alleged separability of the imported merchandise, it is further contended that the value of the carvings should be deducted from the value of the clocks (cases and movements), with the consequent effect of lower specific duties being applicable under said subdivision (1).

The pertinent tariff provisions are hereinbelow recited:

PAR. 368. (a) Clocks, clock movements, including lever movements, clockwork mechanisms, time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, * * * all the above (except the articles enumerated or described in paragraph 367), whether or not in cases, containers, or housings:

(1) If valued at not more than $1.10 each, 55 cents each; valued at more than $1.10 but not more than $2.25 each, $1.00 each; valued at more than $2.25 but not more than $5 each, $1.50 each; valued at more than $5 but not more than $10 each, $3 each; valued at more than $10 each, $4.50 each;

(2) any of the foregoing shall be subject to an additional duty of 65 per centum ad valorem;

* * * * * * *

(e) Cases, containers, or housings suitable for any of the movements, mechanisms, devices, or instruments enumerated or described in this paragraph, not specially provided for, when imported separately, 45 per centum ad valorem. Any such case, container, or housing, whether imported separately or attached to any of the foregoing movements, mechanisms, devices, or instruments, shal have stamped, cut, engraved, or die sunk, conspicuously and indelibly on the back thereof, the name of the country of manufacture.

Paragraph 412 of the Tariff Act of 1930, as modified, *supra*:

Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

* * * * * * *

Other * * * _____ 16⅔% ad val.

At the trial, plaintiffs called as their first witness, Howard E. Johnson, manager of the import department of James Loudon & Co.,

Inc., the customhouse broker who made the entry of the instant merchandise. His testimony was, in effect, offered in lieu of that of Ernest Berg, active member of the Berg Importing Co., the ultimate consignee herein, who had died prior to the time of trial. Witness Johnson stated that he had on several occasions seen the imported merchandise at the home of Mr. Berg, which was also his warehouse, and that he had purchased one of the clocks. He saw Mr. Berg assemble a clock by attaching two weights to the chains which hung from the box or case. At that time, the movement was in the case; the dial was on its face; and all that was necessary was to attach the weights to the chains, and, with the use of two screws, add the wood carvings. The clocks, as assembled, complete with carvings, are illustrated by various pictures contained in plaintiffs' collective illustrative exhibit 1, which show the carvings to consist of deer, guns, birds, hunting bags, trumpets or horns, and floral and foliage designs. Some, but not all of these decorations, adorn each of the illustrated clocks. An additional reproduction of one of these items is in evidence as defendant's exhibit B.

This witness also stated that a box containing the movement could be used with any number or several different designs of the carvings; that there is nothing peculiar about the form of the design that confines its use to a particular box; that as soon as the weights are attached, the box plus the dial plus the hands and the chains constitute an article capable of keeping time; and that when he was at Mr. Berg's warehouse, the boxes he saw were all of the same size, whereas the ornaments were of several different styles and sizes.

On cross-examination, Johnson testified that he did not see this merchandise in its original packing at the time of importation, and that aside from the invoices, he had no knowledge of the manner in which it was packed. He thought at first that he saw the merchandise several days after importation, but later realized that it was not until about 2 months thereafter. He personally remembered the entry in this case because the usual entry clerk employed by James Loudon & Co., Inc., was on vacation and he, himself, prepared the papers. Although there were two consular invoices, one for the movements and cases, the other for the carvings, he made a single entry for the entire importation, listing the wood carvings as manufactures of wood; the movements and cases as clocks. He subsequently made an application to the Bureau of Customs for leave to substitute two entries for the single one, but was advised that the proposed substituted entries would not avail to avoid classification of the merchandise as entireties (defendant's exhibit A).

Bert B. Isaacs, who has been in the business of repairing and selling clocks, including cuckoo clocks, for 27 years, also testified for plaintiffs. He stated that the purpose of a cuckoo clock is to have a gong

and bird signal the half hour. Cuckoo clocks, according to this witness, come in various sizes, some in ordinary cases, others being more elaborate. The main case is a box, always of wood, which is designed to keep the movement clean. The movement is in the case, the dial on its face. Then, there is a gable. Different styles of trimming, some very ornate with heavy carving details of birds and hunting scenes, others relatively plain, both types as illustrated by plaintiff's collective illustrative exhibit 1, are attached to the main case. In connection with cuckoo clocks which this witness had assembled, some required only the attachment of a top gable. Others had to have all of the ornaments or trimming added.

Isaacs stated further that cuckoo clocks vary according to the manufacturer and the size of the clocks. He would say that there are about a half dozen sizes of boxes, about 12 or 15 different patterns of ornaments, and that about 3 or 4 patterns could be used on any one box. They must, however, be matched "to fit the gable, to a certain pitched roof." In other words, providing that they are the same make or manufacture, you could buy six clocks and have three transfers of patterns. When the article is sold to the consumer, it is a complete unit. It is also displayed that way by salesmen. A jeweler will, however, usually separate the ornaments for boxing purposes, to prevent breakage and to save expense.

On cross-examination, Isaacs testified that when you buy a cuckoo clock, it is purchased together with all the ornaments; that each manufacturer would have a certain type of workmanship and certain color of finish; that he did not know if the ornaments of one clock would fit the clock of another manufacturer; that the assembling of the complete unit was not a difficult matter; and that if one were to import a dozen clocks, he would get 12 clocks, 24 weights, 12 birds, and 12 sets of carvings, the carvings being set up so as to fit the particular boxes.

Predicated upon this record, counsel for the plaintiffs contend that the movements and the cases on the one hand, and the carvings on the other, are not entireties, inasmuch as the clocks are complete time-keeping mechanisms before the carvings are attached, and because no one set of carvings is dedicated for attachment to any particular clockcase. Plaintiff cites as controlling *Meyer* v. *United States*, 65 Treas. Dec. 1446, Abstract 27700, stating that horse blankets and monograms are separately dutiable, and *Richard* v. *United States*, 46 Treas. Dec. 694, Abstract 48045, wherein pictures and frames were held not to be entireties. It is urged that the case of *Enders* v. *United States*, 72 Treas. Dec. 790, T. D. 49312, which involved clockcases and clock movements held to be entireties, has no bearing on the instant controversy since it is here conceded that the involved cases and movements were properly classified as clocks.

Counsel for the Government, in seeking to sustain the collector's action, argues that the article imported was a cuckoo clock, which would not be known as such without all its essential appurtenances, including the ornamental carvings. Hence, it is the position of the Government that the principle of entireties, as enunciated in the cases of *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T. D. 41232; *Close & Stewart* v. *United States*, 2 Cust. Ct. 318, C. D. 151; *Pan American Airways, Inc.* v. *United States*, 16 Cust. Ct. 134, C. D. 1000; *United States* v. *John Wanamaker*, 16 Ct. Cust. Appls. 548, T. D. 43266; *International Models Co.* v. *United States*, 6 Cust. Ct. 108, C. D. 440; *Leon Hirsch* v. *United States*, 22 Treas. Dec. 102, T. D. 32194; and *Oliver Enders* v. *United States*, *supra*, applies with equal vigor to the state of facts herein involved.

As has been observed on many occasions in the past, the determination of the question of what constitutes an entirety for customs purposes is not without its perplexities. Nevertheless, the rule itself is a simple one. It is expressed as follows in the leading case of *Altman & Co.* v. *United States, supra*:

A consideration of these pronouncements of the courts leads to the conclusion that if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

We are of opinion that this is a proper case for the application of the stated principle, for we are convinced that the article imported, the article intended to be imported, the article which was expected to be sold in this country, was a complete entity rather than the individual items which comprise it. While a cuckoo clock may be effective as a time-keeping mechanism before a given set of carvings has been attached to the case containing the movements, it has no commercial utility as such. The ornamental carvings are as essential to its completeness as the bird which signals the half hour.

Whereas there is testimony to the effect that a box of any given size could be used with any one of several different designs of carvings, provided, of course, the carvings match the workmanship and color of the box and the pitch of the gable, the fact is that a case housing a movement is incomplete as a cuckoo clock, without the addition of a set of carvings. To all intents and purposes, the article is not a complete entity until the ornamental work is attached. That the selection of carvings for cases is not as indiscriminate as the testimony would tend to indicate seems clear from the invoice description and designation of the items before us. For each numbered design of case and movement, there is an identical numbered design of carvings.

The collector, in segregating the entireties, selected for grouping, case, movement, and carvings having the same invoice item number.

A reference to the provisions of paragraph 368, *supra*, and a comparison thereof with the provisions of paragraph 367 of the Tariff Act of 1930, indicates a congressional purpose to afford different tariff treatment to the time-keeping mechanisms respectively provided for therein. Paragraph 367 provides separately for watch movements, etc., and for "All cases, containers, or housings, designed or suitable for the enclosure of any of the foregoing movements, mechanisms, devices or instruments * * *." It contains no *eo nomine* provision for watches. Paragraph 368, provides *inter alia*, both for clocks and for clock movements, as well as for "Cases, containers, or housings suitable for any of the movements * * * enumerated or described in this paragraph, not specially provided for, when imported separately, * * *."

Two significant differences between the two provisions readily present themselves. Paragraph 367 does not provide for watches. Paragraph 368 does provide for clocks. Paragraph 367 provides for cases suitable for the *enclosure* of watch movements, whenever imported. Paragraph 368 provides for cases suitable for any of the movements, only when imported separately. For customs purposes, a clock is a tariff entity, and the case which houses the movement is not limited strictly to an enclosure. Thus, there can be no doubt that Congress contemplated that an imported clock might consist of attachments and appurtenances not strictly functional but, nevertheless, essential to its completeness as an article of commerce.

We allude to the foregoing comparison of the two provisions for time-keeping mechanisms because of certain statements made both by this court and our appellate tribunal in the recent case of *Concord Watch Co., Inc.* v. *United States*, 27 Cust. Ct. 57, C. D. 1348, affirmed 41 C. C. P. A. (Customs) 13, C. A. D. 523. That case involved certain metal stands, or feet, rings, and parts of frames, which were attached, though not permanently, to imported watchcases, and were claimed to be entireties therewith.

In holding that the cases and attachments were not entireties, this court had stated:

> The broad principle of entireties in customs law that when two or more articles are imported together, are designed and intended to be used together, and that a joining together thereof creates a complete article of commerce, merging them into a new article having a new name and new use, they will be considered to be a tariff entity, cannot be applied in the case of watches nor of watchcases on the facts as here presented. Were it not otherwise provided for by tariff law, watch movements and cases when imported as units of merchandise might conceivably be considered as entireties as were the bedspreads and fringes in the case of *Salemi & Sons* v. *United States*, 19 C. C. P. A. (Customs) 43, T. D. 44892, and the bell-shaped metal articles suspended from ornamental metal stands together with

metal mallets for striking purposes in the case of *United States* v. *Woolworth*, 23 C. C. P. A. (Customs) 365, T. D. 48212. There are numerous other cases of like import in customs law, several of which have been cited by plaintiff's counsel.

Our appellate court, in affirming the conclusions reached by us, made the following comments:

It seems appropriate to state at this juncture that in paragraph 367, the statute itself makes it clear that watch movements and watch cases are separately classifiable for tariff purposes, and, although the movements may be fixed in cases particularly adapted to contain particular movements, the cases and the movements may not be combined and assessed with duty as entireties. Even the movements themselves are separable for duty purposes according to certain defined measurements of width and the number of jewels used.

\* \* \* \* \* \* \*

We are unable to find that the rings, feet (or stands), and the decorative outer frames, the duty upon which is the matter here in controversy, constitute any part which is essential to the cases as enclosures of the watch movements. Without them the movements are fully enclosed. If they were articles necessary to make the *cases* complete the situation would be different, but the fact that they are useful in the support of the *desk watches as entireties* does not make them parts of the *cases* to which they are attached. [Italics quoted.]

It seems clear from the foregoing excerpts that one of the primary reasons for rejecting the importer's claim that the cases and stands, etc., were entireties was the absence of a provision for watches. The same omission of an *eo nomine* tariff designation does not obtain in the case of clocks. Accordingly, we are prepared to say that all elements which constitute a complete cuckoo clock in the form in which it is ordinarily recognized as an article of commerce, when imported in the same shipment, are parts of the entirety.

We find nothing in the cases cited by counsel for plaintiffs which would necessitate a contrary conclusion.

For the reasons stated, the claim of the plaintiffs for the separate classification of the involved ornamental wood carvings within the provisions of paragraph 412 of the Tariff Act of 1930, as modified, as manufactures of wood, is overruled.

Judgment will be entered accordingly.