(C.D. 4407)

Mitsui & Co. (U.S.A.), Inc. *v.* United States

(Decided February 7, 1973)

*Barnes, Richardson & Colburn* (*Earl R. Lidstrom* and *Hadley S. King* of counsel) for the plaintiff.

*Harlington Wood, Jr.*, Assistant Attorney General (*Gilbert L. Sandler*, trial attorney), for the defendant.

RE, Judge: The legal question presented in this case pertains to the proper rate of duty to be assessed on certain merchandise described on the customs invoice as "Transistor Clock Lamp Radio 'VISCOUNT Brand'". It was imported from Japan and was entered at the port of New York in October 1967. The importation, by admission in the pleadings, is a "combination article consisting of a radio, a clock movement, and a lamp." It is not disputed that the clock move-

ment is American-made and is fitted with a dial and hands of Japanese origin.

The lamp portion was assessed at 19 per centum ad valorem under item 653.40 of the Tariff Schedules of the United States [TSUS] which covers illuminating articles and parts thereof, of base metal. The clock/radio portion was assessed at 12½ per centum ad valorem under TSUS item 685.22, which provides for "[r]adiotelegraphic and radiotelephonic * * * reception apparatus * * * whether or not incorporating clocks * * *".

The regional commissioner of customs further determined that the clock movement, dial and hands were subject to the requirements of headnote 5 of schedule 7, part 2, subpart E of the tariff schedules. Headnote 5 reads as follows:

"5. Combination Articles Containing Watch or Clock Movements.—A watch or clock movement (and its dial, if any) in a combination article is classifiable under the provision applicable to such combination article, but, in determining the duties on the combination article, the movement (and its dial, if any) shall be constructively separated therefrom and assessed with the same rate as would have applied if it had been imported separately. In such circumstances, the movement and its dial shall also be subject to the same marking requirements provided for in headnote 4 of this subpart. However, such separate assessment and special marking shall not be applicable to movements which, when imported, are installed as the usual equipment of vehicles or craft provided for in part 6 of schedule 6 or as integral and essential parts of laboratory, industrial, or commercial apparatus or equipment."

The clock movement, dial and hands were accordingly assessed under TSUS item 720.14 which provides for clock movements with dials or hands whether or not assembled thereon, valued over $2.25 but not over $5 each.

Item 720.14 reads as follows:

"Clock movements, assembled, without dials or hands, or with dials or hands whether or not assembled thereon:

    *   *   *   *   *   *   *

Other clock movements:

    *   *   *   *   *   *   *

720.14          Valued over $2.25 but not over $5 each _____ 75¢ each + 32.5% ad val. + 12.5¢ for each jewel, if any"

In assessing duty, allowance was made for the clock movement as a product of the United States, which was assembled abroad into the imported article, and thereby entitled to duty-free entry pursuant to TSUS item 807.00. This item provides as follows:

"807.00     Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting__ A duty upon the full value of the imported article, less the cost or value of such products of the United States (see headnote 3 of this subpart)"

Headnote 3 of schedule 8, part 1, subpart B provides:

"3. Articles assembled abroad with components produced in the United States.—The following provisions apply only to item 807.00:

(a) The value of the products of the United States assembled into the imported article shall be—
    (i) the cost of such products at the time of the last purchase; or
    (ii) if no charge is made, the value of such products at the time of the shipment for exportation, as set out in the invoice and entry papers; * * *.

(b) The duty on the imported article shall be at the rate which would apply to the imported article itself, as an entirety without constructive separation of its components, in its condition as imported if it were not within the purview of this subpart. If the imported article is subject to a specific or compound rate of duty, the total duties shall be reduced in such proportion as the cost or value of such products of the United States bears to the full value of the imported article."

The assessment was established as follows: the clock movement, dial and hands were appraised at a unit value of $2.79; the "American" component of this value, i.e., the movement, was appraised at $2.30 and duty allowance was made therefor in accordance with item 807.00; and

the difference or balance of 49 cents, which admittedly represented "transportation costs of the American goods to Japan, hands and dials of Japanese origin and a portion of the cost of assembling the American goods into the imported article", was assessed for duty under item 720.14. However, instead of applying the combination rate specified therein (75¢ each plus 32.5 per centum ad valorem plus 12.5¢ for each jewel, if any), the ad valorem equivalent rate of 59.3 percent was used. This may be gleaned from the red ink notations placed on the Special Customs Invoice by the commodity specialist, which show how the clock movements were appraised and advisorily classified. The notations read as follows:

> "clock movement App'd at $2.79 each, net, packed ADV   Value derived as follows=American Clock movements App'd at $2.30 each=807.00 Free   Balance of Value, 49¢ Dutiable, at the R/A Equivalent Rate of 59.3% under item 807.0020 720.1420"

No appeal was taken and, after the appraisements became final, the merchandise was classified in liquidation in accordance with the advisory classification. The lamp and radio portions of the combination article were entered and appraised at the invoiced unit values of $1.30 and $6.54, respectively.

Against this background, plaintiff advances the following claims: 1) that the imported lamp/clock/radio is constructed, imported and sold as a single entity, and is therefore dutiable as an entirety at 11½ per centum ad valorem under TSUS item 688.40 as "[e]lectrical articles * * * not specially provided for"; 2) that the portion of the article valued at 49 cents was erroneously assessed under item 720.14 as it is not a "clock movement", but is properly dutiable either at the rate claimed applicable to the combination article (11½ percent under item 688.40) or, alternatively, at the rate at which the clock/radio was assessed (12½ percent under item 685.22) ; and 3) that the government erred in assessing this portion at an ad valorem equivalent rate of duty.

Defendant concedes that the importation is properly dutiable as an entirety, but contends that the assessment of the portion of the merchandise under the "clock movement" provision was proper, as was the utilization of an ad valorem equivalent rate of duty.

## The Entireties Claim

The imported article, as represented by exhibit 1, consists of an alarm clock and radio enclosed together in a plastic case to which a small plastic "box" containing a transistor is attached on the left-hand side. A transistor lamp is attached to the clock/radio through a small aperture at the top of the case. The lamp and radio may be operated independently of each other, or together, while the clock runs con-

58

tinuously. Since the importation has only one electric plug, the clock, radio and lamp operate from a common electric power source.

The importation, as is evident from the exhibit, is more than a clock, a radio, or a lamp. It consists of three distinct independently functioning components incorporated into one integral unit. It is a new commercial article with a distinct and unique character of its own. See *Sherriff-Guerringue, Inc.* v. *United States*, 62 Cust. Ct. 711, C.D. 3852 (1969). As stated in *V. Alexander & Company, Inc.* v. *United States*, 59 Cust. Ct. 510, 514, C.D. 3212, 276 F. Supp. 573, 576 (1967), "[a]n article will be excluded from its normal provision when, by virtue of joinder with another article, it becomes an inseparable part of a multi-function entity. That is to say, when the change undergone is no longer merely an evolutionary advance or the addition of a subsidiary auxiliary part, the changed article becomes more than that which it formerly was." See also *Dollar Trading Corp.* v. *United States*, 67 Cust. Ct. 308, C.D. 4290 (1971), *aff'd*, 60 CCPA 10, C.A.D. 1074 (1972); *Robert L. Groff, Inc.* v. *United States*, 62 Cust. Ct. 267, C.D. 3740 (1969).

It is, therefore, the determination of the court that the merchandise which was constructed and imported as a single physical entity, is properly dutiable as an entirety. In the absence of a more specific provision that embraces the imported merchandise (TSUS General Interpretative Rule 10(c)), it is properly dutiable, as claimed, under item 688.40 as electrical articles not specially provided for, at 11½ per centum ad valorem.

### Claim Pertaining to Clock Movements

The fundamental question presented pertains to the applicability of headnote 5 of schedule 7, part 2, subpart E to that portion of the imported article valued at 49 cents each and assessed under the provision for "[c]lock movements * * * with dials or hands whether or not assembled thereon" which are "valued over $2.25 but not over $5 each".

Plaintiff contends that headnote 5 is "neutral to the issue" in that it refers only to movements, and that "* * * when the Regional Commissioner separated the *movement*, valued at $2.30, from the clock/radio and assessed it at a free rate, the purpose and directive of Headnote 5 was fulfilled and has no further bearing on the matter". (Brief at 17.) (Emphasis in original.) The "remainder", plaintiff urges, is outside the purview of headnote 5 as it is not a movement.

Defendant, on the other hand, claims that the imported combination article incorporates a clock movement which *includes* an American-made component. It urges that headnote 5 is applicable to *all* clock movements in combination articles (with certain stated exceptions)

whether or not they include American-made components coming within the ambit of item 807.00.

Headnote 5 provides that

"A watch or clock movement (and its dial, if any) in a combination article is classifiable under the provision applicable to such combination article, but, in determining the duties on the combination article, the movement (and its dial, if any) shall be constructively separated therefrom and assessed with the same rate as would have applied if it had been imported separately. * * *"

It is to be noted that it was added to the tariff schedules by the Tariff Schedules Technical Amendments Act of 1965, Public Law 89–241, 79 Stat. 933, 946. Its purpose was to apply the old "constructive segregation" theory developed under earlier tariff acts in order to assess all watch and clock movements and their dials, if any, at the applicable rate for watch and clock movements (and dials). For the legislative history of item 807.00 see *United States* v. *Baylis Brothers Co.*, 59 CCPA 9, C.A.D. 1026 (1971). Hence, with respect to the proposed amendment, Senate Report No. 530 to accompany H.R. 7969 (Pub. L. 89–241) states, in pertinent part:

"Section 65. Combination articles containing watch or clock movements.—This provision eliminates a potential avoidance device by restoring the rules of the old tariff structure under which combination articles which included a watch or clock movement (such as a barometer-thermometer-clock, or a clock-radio) were dutiable on the basis of the separate items. Under the present schedules, which provide a single rate for the combination article, it is *possible to avoid the higher rate on clocks* and watches by combining them with a low value thermometer, for example.

This provision also makes a conforming change in the rate applicable to certain of such combination articles to eliminate the weight given to the *clock* or watch in the set; * * *." U.S. Code Cong. & Admin. News, 89th Cong., 1st Sess. 1965, Vol. 2, p. 3446. (Emphasis added.)

It is noted that the report uses the terms "clock" and "clock movement" interchangeably. As indicated in the Senate Report, headnote 5, subject to the stated exceptions, by its very language cuts across and prevails over all provisions for combination articles incorporating clock movements and dials. Therefore, all clock movements and their dials must be constructively separated from the combination article and assessed with the same rate of duty that would have applied if the clock movements and their dials had been entered separately.

There is no difficulty reconciling this statutory directive with the *eo nomine* duty provisions for clock movements imported with their

dials, such as item 720.14, or with the duty-free provisions for American goods returned, such as item 807.00. The essential requirement in its application to these provisions in the tariff schedules is that the clock movement and its dial be treated as *a separate entry*.

Item 807.00 provides for "[a] duty upon the full value of the *imported article*, less the cost or value of such products of the United States". Headnote 3(b) of schedule 8, part 1, subpart B provides:

"(b) The duty on the *imported article* shall be at the rate which would apply to the *imported* article itself, as an entirety without constructive separation of its components, in its condition as imported if it were not within the purview of this subpart. If the *imported article* is subject to a specific or compound rate of duty, the total duties shall be reduced in such proportion as the cost or value of such products of the United States bears to the full value of the *imported article*." (Emphasis added.)

The "imported article" of item 807.00 and its governing headnote 3(b) is, in this case, the clock movement (and its dial) which, by virtue of the headnote 5 mandate, must be treated as a separate item, and which, as required by both headnotes 5 and 3(b), must be assessed separately at the rate of duty applicable thereto.

Plaintiff claims that the regional commissioner erred by constructively separating the hands and the dial along with the American-made clock movement for purposes of headnote 5. Inasmuch as headnote 5 mandates the constructive segregation and assessment of movements *and their dials*, if any, from combination articles, plaintiff is clearly in error in urging that dials are not within its purview.

Plaintiff claims further that the "hands" are also outside the scope of headnote 5 in that they are not "movements" and states that "a *movement* is and always has been a *movement*, the *hands* are and always have been *hands*". (Reply brief, page 4.) (Emphasis in original.) This claim is likewise without merit since under TSUS, the Tariff Acts of 1930 and 1922, and earlier tariff statutes, watch or clock movements imported assembled with hands and dials have been assessed as entireties as watch or clock movements. See headnote 2 of schedule 7, part 2, subpart E.

The legislative history of subpart E of schedule 7, part 2 ("Watches, Clocks, and Timing Apparatus") indicates very clearly the intent to classify and assess hands and dials imported with their movements (watch or clock) as entireties under the appropriate provision for such movements whether or not the hands and dials are assembled thereon. This may be gleaned from the hearing held by the United States Tariff Commission on July 14, 1959 in Washington on this section of the proposed revised tariff schedules, as reported in the *Tariff*

*Classification Study*, Explanatory and Background Materials, Schedule 7, November 15, 1960, pages 720 *et seq*. As a result of questions raised at this hearing, the superior headings to the watch and clock movement provisions (items 716.05–719 and 720.10–720.18, inclusive) were subsequently amended to read as they now appear in the tariff schedules to ensure the treatment of movements entered with dials and hands as entireties. The superior heading to the watch movement provisions reads:

> "Watch movements, assembled, without dials or hands, or with dials or hands whether or not assembled thereon".

As noted, these provisions are a carryover from prior tariff statutes under which dials and hands imported assembled on movements were classified as an entirety with the movements at the applicable rate for such movements. Thus, for example, as prior to TSUS, watches had not been provided for *eo nomine* under the Tariff Acts of 1897 down through 1930. See *Concord Watch Co., Inc.* v. *United States*, 41 CCPA 13, C.A.D. 523 (1953). Therefore, watch movements and watch cases were held to be dutiable as separate entities. Accordingly, if a complete watch, or a clock incorporating a complete watch movement, were imported, the case was held to be separately dutiable from the movement; and the movement, complete with dial and hands, was assessed as a watch movement. *United States* v. *Continental Lemania, Inc.*, 21 CCPA 192, T.D. 46726 (1933) ; *United States* v. *John Wanamaker, Philadelphia, Inc.*, 20 CCPA 367, T.D. 46132 (1933) ; *United States* v. *European Watch & Clock Co.*, 11 Ct. Cust. Appls. 363, T.D. 39160 (1922) ; *United States* v. *Strasburger & Co.*, 9 Ct. Cust. Appls. 138, T.D. 37982 (1919) ; *Racine et al.* v. *United States*, 99 F. 557 (S.D. N.Y. 1899), *aff'd*, 107 F. 111 (2d Cir. 1901). In the *John Wanamaker* case the merchandise consisted of a leather handbag with an attached strap watch. It was held to be dutiable as three distinct entities, namely, a pocketbook in chief value of leather, a watch movement, and a watch case, under the *eo nomine* provisions therefor in the Tariff Act of 1930.

Plaintiff relies upon the statement found in *Didisheim Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 647, 648, T.D. 41487 (1926), that—

> "The mechanism of a watch when not inclosed in a case or fitted with a dial or hands would be a watch movement."

It is to be noted, however, that the court, in the *Didisheim* case, held that the merchandise therein, a stop watch known as a timer, and described as—

> "* * * a pocket mechanism inclosed in a round case, equipped *with a dial and two hands* * * *." *Ibid*. (Emphasis added.)

was properly classifiable under paragraph 367, Tariff Act of 1922, as "[w]atch movements whether imported in cases or otherwise * * *." The court stated:

"* * * It keeps and indicates time for a half hour, is actuated by a coil spring regulated by a train of wheels and a balance wheel and denotes time by the movement of hands over a graduated and figured dial. * * * The registering of seconds, fifths of a second, minutes and thirds of a minute for a half hour is *accomplished by a watch mechanism* inclosed in a case. The goods are therefore watch movements inclosed in a case and are precisely described in paragraph 367." *Id.* at 649. (Emphasis added.)

Inasmuch as clocks, unlike watches, were provided for in prior tariff statutes, clocks and clock movements imported in the same shipment, although packed separately, were held dutiable as entireties under the provision for clocks, rather than as separate entities. *Oliver Enders* v. *United States*, 72 Treas. Dec. 790, T.D. 49312 (1937). See also *Berg Importing Co., James Loudon & Co., Inc.* v. *United States*, 32 Cust. Ct. 210, C.D. 1604 (1954).

However, where earthenware clock case sets were held separately dutiable from their movements because they were specially provided for under paragraph 211, Tariff Act of 1922, as "[e]arthenware * * * clock cases with or without movements", the complete clock movement with dial and hands was assessed as a unit under the clock movement provision of paragraph 368 of that act. *C. A. Haynes & Co.* v. *United States*, 62 Treas. Dec. 558, T.D. 46007 (1932); *accord, Transatlantic Clock & Watch Co.* v. *United States*, 60 Treas. Dec. 1337, Abstract 17677 (1931). See also *C. J. Tagliabue Mfg. Co.* v. *United States*, 21 CCPA 221, T.D. 46751 (1933).

In short, although plaintiff strains for a more restricted meaning, the term "movement" for tariff purposes, has long embraced the imported article equipped with "hands". Accordingly, absent any evidence of contrary Congressional intent, the court must conclude that the term "clock movement", as used in subpart E, headnote 5 of schedule 7, part 2, was not intended to have a meaning or effect different from that attached to its use elsewhere in subpart E. To hold otherwise would distort the stated purpose and intent of the Customs Simplification Act of 1954 (which directed the Tariff Commission to revise and consolidate the tariff classification schedules) to eliminate anomalies and illogical results in the classification of articles. *Tariff Classification Study*, Submitting Report, November 15, 1960, 1, 42, *et seq.* Furthermore, it would do violence to the general rule that statutes *in pari*

*materia* must be construed together. *Goat and Sheepskin Import Co. et al.* v. *United States*, 5 Ct. Cust. Appls. 178, T.D. 34254 (1914); *Judson-Sheldon Corp.* v. *United States*, 22 Cust. Ct. 111, C.D. 1168 (1949), *aff'd*, *United States* v. *Judson-Sheldon Corp.*, 37 CCPA 89, C.A.D. 424 (1950).

It is, therefore, the determination of the court that, in accordance with headnote 5, the "clock movement" (including the hands) and dial were properly constructively separated from the imported combination article for assessment under item 720.14, as clock movements with dials or hands whether or not assembled thereon.

### The Ad Valorem Equivalent Rate Question

Plaintiff's final claim relates to the alleged erroneous application of an ad valorem equivalent rate (59.3%) to the dutiable portion of the constructively separated clock movement and dial. It appears that the basis of plaintiff's objection is the failure of the regional commissioner to assess this portion at the 11½ percent rate claimed for the lamp/radio portion of the imported combination article. Plaintiff, on page 5 of its reply brief, contends:

> "We have not attacked the use of an ad valorem equivalent rate generally – only when used in the case of an 'imported article' which is dutiable at an ad valorem rate.
>
> In this case the plaintiff is certainly aggrieved. If the $0.49 portion involved herein is dutiable at 59.3%, as assessed, the importer is paying more duty than if the $0.49 portion is dutiable at 11.5%, as claimed."

Since the court has determined that the clock movement and dial are dutiable at the rate assessed under item 720.14, this claim is rendered moot. Furthermore, plaintiff does not dispute defendant's contention that, no matter how the rate of duty under item 720.14 might have been calculated, the *amount* assessed thereunder would have been the same. Therefore, the court need not consider the propriety of the method used herein to calculate the duty on the clock movement.

In view of the foregoing the claim for assessment of the imported combination lamp/clock/radio as an entirety under item 688.40 at 11½ percent is sustained, subject to the constructive separation, pursuant to headnote 5 of schedule 7, part 2, subpart E, of the entire clock movement (and dial). The assessment upon the full value of the clock movement and dial under item 720.14, less the duty allowance for the American-made component as provided for in item 807.00, at the ad valorem equivalent rate of 59.3 percent, is affirmed. Judgment will be entered accordingly.