**I. PUKEL**

v.

**UNITED STATES.**

C.D. 3497; Protest 66/11503–25421–65.

United States Customs Court,

First Division.

June 26, 1968.

I. Pukel, pro se.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Brian S. Goldstein, New York City, trial attorney), for defendant.

Before WATSON and MALETZ, Judges.

MALETZ, Judge:

The imported merchandise included in this case was invoiced as "7,000 musical movements 12 teeth in plastic shells, heavy duty type with 1″ ring keys" and "7,000 4″ bent rods." It was classified under item 737.90 of the Tariff Schedules of the United States as parts of toys and assessed with duty at the rate of 35 percent ad valorem.[1] Plaintiff claims that the merchandise is properly dutiable at the rate of 16 percent ad valorem, under item 726.75 of the Tariff Schedules of the United States, as "movements and other parts of music boxes."[2]

First, defendant has moved to dismiss the protest on jurisdictional grounds, its argument being that the protest fails distinctly and specifically

---

1. Schedule 7, Part 5, Subpart E of the Tariff Schedules of the United States, provides:

    Toys, and parts of toys, not specially provided for:
    *   *   *   *   *
    737.90 Other ...........35% ad val.

2. Schedule 7, Part 3, Subpart B of the Tariff Schedules of the United States, provides:
    *   *   *   *   *
    726.75 Movements and other parts of music boxes ..........16% ad val.

to apprise the collector of the nature of the claim and is so vague and ambiguous that the collector is required to speculate as to the rate of duty and the precise item of the Tariff Schedules claimed by plaintiff. The argument is without merit, however, and the motion to dismiss is denied. Examination of the protest shows that it identified the entry in question, specified the date of. liquidation, and indicated the amount of unpaid or increased duties. The body of the protest then stated:

> The undersigned was in contact with Examiner "Rainer" (DR/9) who states that *musical movements entered at 16% should have been liquidated as entered.* [Emphasis supplied.]

Relating the protest to the consumption entry—i. e., Customs Form 7501—as the protest indicates, it is noted that plaintiff entered merchandise described as "MUSICAL MOVEMENTS & PARTS FOR MUSIC BOXES," under item 726.75 at a rate of duty equal to 16 percent ad valorem. The entry papers—which were in the collector's possession—were thus unambiguous with regard to the tariff provision and the rate of duty invoked. In turn, the protest, containing as it did the phrase "should have been liquidated as entered," clearly called the collector's attention to the tariff provision and rate of duty relied upon. The situation in short is that the collector was given specific notice of the fact that plaintiff intended to pursue a claim for reliquidation under item 726.75 at 16 percent ad valorem—and this is sufficient for jurisdiction to attach. See e. g., Kilburn Mill v. United States, 26 CCPA 54, T.D. 49598 (1938); Chas. Kurz Co. v. United States, 57 Cust.Ct. 73, C.D. 2733 (1966); Atlantic Linen Importing Co. v. United States, 54 Cust.Ct. 290, Abstract 68985 (1964); Wieboldt International Div., et al. v.

United States, 56 Cust.Ct. 191, C.D. 2626 (1966); Palmer Import Co., Inc. v. United States, 55 Cust.Ct. 434, Abstract 69561 (1965).[3]

We now consider the case on the merits. The record establishes at the outset that two types of musical movements are involved, both of which consist of a mechanism for producing musical sounds by means of pins on a rotating spring-driven cylinder striking the fingers of a tuned steel comb. The mechanism rests on a metallic base and is surrounded by a protective plastic covering. Both types of movements also contain a threaded projection that extends vertically from the bottom or metallic surface. An accompanying key is screwed into this projection and winds the spring mechanism. When unwound, the tension thus generated releases through a set of gears the energy needed to rotate the cylinder and its horizontal axle.

In one type of movement, the horizontal axle of the cylinder protrudes approximately one-quarter of an inch through an aperture in one of the sides of the plastic covering; this protrusion is threaded and is attachable to a partially hollowed bent rod whose inner surface is also threaded. When so attached, the bent rod revolves with the rotation of the cylinder and axle. By contrast, the second type of movement does not possess a protruding axle, therefore precluding attachment of a bent rod.

Plaintiff—who has been an importer of musical movements for some 17 years —was the sole witness at the trial of the case. He testified that in some instances the two types of movements were used interchangeably in the sense that while the movement with the protruding axle was sold with a bent rod, it was also used without that attachment. He further testified that the movements when

---

3. Urging a contrary result, defendant relies upon Herrman v. Robertson, 152 U. S. 521, 14 S.Ct. 686, 38 L.Ed. 538 (1894); Davies v. Arthur, 96 U.S. 148, 24 L.Ed. 758 (1877); and Castelazo & Associates, et al. v. United States, 59 Cust.Ct. 165, C.D. 3106 (1967). None

of these cases is in point, however. For in each, not only did the protest fail to apprise the collector of the nature of the claim, it made no reference—as here—to any other document that would accomplish that purpose.

employed without a bent rod were incorporated into toys, music boxes, and jewel boxes. Such movements, he added, "can be used any place." The movements when joined with a bent rod were used, he stated, in cigarette boxes; as parts of movable toys; as parts of movable dolls that were in turn placed in jewelry boxes; and for "other things." He further testified that when a movement joined with a bent rod was used in toys or jewelry box dolls, those items moved in conformity with the circular movement of the rotating rod. The witness gave no further description of the articles into which the imports were incorporated, nor provided any indication of the relative frequency of occurrence of each of the aforementioned uses. He was not aware of all uses to which his merchandise was put.

We note that item 726.75—the provision claimed by plaintiff to be applicable to the imported merchandise—covers (as we have seen) "[m]ovements and other parts of music boxes." It is plain from this language that the "movements" thus specified must be parts of music boxes; otherwise the word "other" in the phrase "and other parts of music boxes"—as it appears in the item—would be devoid of meaning. This brings us to the question of the meaning of the term "music box," as used in that item. We conclude that a "music box" is a small mechanical movement playing tunes automatically, which is incorporated into a box, case, or cabinet. Instructive is the following definition set out by this court in Cody Manufacturing Co., Inc. et al. v. United States, 33 Cust.Ct. 377, 378, Abstract 58428 (1954), which was accepted in the majority opinion in United States v. Cody Manufacturing Co., Inc.

et al., 44 CCPA 67, 70, C.A.D. 639 (1957):

The term, "music box," as defined by leading dictionary authorities, is a case or a cabinet, housing a mechanism that plays tunes or melodies automatically. Specifically, Webster's New International Dictionary defines "music box" as "a box or case containing apparatus moved by clockwork so as to play certain tunes automatically." Funk & Wagnalls New Standard Dictionary embodies the definition of "music box" under the word "musical," wherein "m. box" is defined as "a case or cabinet containing a mechanism contrived to reproduce melodies, and frequently possessing additional musical effects. The notes are reproduced by the vibrations of steel teeth struck by minute pegs projecting from the surface of a revolving cylinder."

To similar effect is the statement in the Explanatory Notes to the Brussels Nomenclature that "Musical boxes * * are small mechanical movements playing tunes automatically, and incorporated into boxes or into various other articles * * *." Vol. III, Explanatory Notes to the Brussels Nomenclature 1955, Ch. 92, pp. 1126, 1130 (1964 ed.).[4] See also e. g., Vol. 16, Encyclopaedia Brittanica, p. 21 (1947); Vol. 14, Collier's Encyclopedia, p. 327 (1953). It may be added that the Tariff Schedules draw a distinction between a music box and a musical movement. Thus, item 725.50 provides specifically for "Music boxes" whereas "Movements and other parts of music boxes" are covered by a separate tariff item, i. e., item 726.75. The Brussels Nomenclature makes a similar distinction by specifically excluding from the definition of "Musical boxes" "Separately imported movements, cylinders or discs." Vol. III, Explanatory Notes to the Brus-

---

4. The Brussels Nomenclature has had an important effect on the preparation of the Tariff Schedules. See e.g., Orazio J. Freni, et al. v. United States, 60 Cust. Ct., C.D. 3375 (1968); J. E. Bernard & Co., Inc. v. United States, 60 Cust.Ct., C.D. 3372 (1968); F. L. Smidth & Company v. United States, 59 Cust.Ct. 276, C.D. 3141 (1967); Pitney-Bowes, Inc. v. United States, 59 Cust.Ct. 181, C.D. 3116 (1967).

sels Nomenclature 1955, Ch. 92, pp. 1126, 1130 (1964 ed.)[5]

██ The problem remaining then is to determine whether the movements in issue are "parts" of "music boxes," as plaintiff claims.[6] General Interpretative Rule 10(ij) of the Tariff Schedules (note 6, supra) provides that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article * * *." In this context, plaintiff's proof falls far short of establishing that the movements in question qualify as parts of music boxes under a criterion of either sole or chief use. This is em-phasized by (i) plaintiff's own testimony that the imported articles are (among other things) incorporated into toys and "can be used any place" and for "other things"; (ii) his failure to provide any indication of the relative frequency of occurrence of the various actual uses of the imported articles; and (iii) his lack of knowledge of all uses to which the articles were put.

The protest is overruled. Judgment will issue accordingly.

WATSON, J., concurs.

---

5. In comparison, tariff legislation prior to the Tariff Act of 1930 contained a provision for musical instruments but made no specific reference to music boxes. Paragraph 1541(a) of the Tariff Act of 1930, as originally enacted, similarly provided only for musical instruments but was later modified to cover "Music boxes and parts thereof." However, unlike the present Tariff Schedules, the modified Tariff Act had no specific provision for musical movements. For cases involving paragraph 1541(a) and the predecessor provisions see e.g., F. B. Vandegrift & Co., Inc. v. United States, 54 CCPA 69, C.A.D. 908 (1967); Lador, Inc. v. United States, 48 CCPA 6, C.A.D. 753 (1960); United States v. Cody Manufacturing Co., Inc. et al., 44 CCPA 67, C.A.D. 639 (1957); Thorens, Inc. v. United States, 31 CCPA 125, C.A.D. 261 (1943); United States v. Borgfeldt & Co., 13 Ct.Cust.Appls. 620, T.D. 41461 (1926); J. E. Bernard & Company Inc. v. United States, 40 Cust.Ct. 563, Abstract 61971 (1958); Thorens Co. v. United States, 15 Cust.Ct. 165, C.D. 965 (1945); Lador, Inc. v. United States, 4 Cust.Ct. 123, C.D. 304 (1940); Marshall Field & Co. v. United States, 55 Treas. Dec. 972, Abstract 7659 (1929); Baldwin Shipping Co. v. United States, 44 Treas. Dec. 451, Abstract 46414 (1923).

6. Parenthetically, it will be observed that if an article is both a part of a toy provided for under item 737.90 and a music box movement provided for under item 726.75, the latter classification would govern. This result would be dictated by General Interpretative Rule 10 (ij) of the Tariff Schedules, which provides:

a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, *but does not prevail over a specific provision for such part.* [Emphasis supplied.]

Nor would this result be altered by Headnote 1, Schedule 7, Part 5, Subpart E of the Tariff Schedules which is applicable to the "toy" provision—item 737.90—and provides:

The articles described in the provisions of this subpart (*except parts*) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules * * *. [Emphasis supplied.]

Clearly, "parts of toys" are not subject to the foregoing all-embracive language and hence their classification is subject to General Interpretative Rule 10 (ij).