59 CCPA

### The UNITED STATES, Appellant,

v.

### FLEX TRACK EQUIPMENT, LTD., and Border Brokerage Co., Inc., Appellees.

### Customs Appeal No. 5430.

United States Court of Customs and Patent Appeals.
April 20, 1972.

---

---

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Patrick D. Gill, New York City, for the United States.

Glad, Tuttle & White, San Francisco, Cal., attorneys of record, for appellee; George R. Tuttle, San Francisco, Cal., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges.

ALMOND, Judge.

This is an appeal from the decision and judgment of the United States Customs Court, Second Division,[1] sustaining the protest against the classification of certain merchandise invoiced as "10 ROLLS COMPRISING 10—ONLY A213 ARCTIC TRACK TREADS RN110."

The merchandise was classified as belting and belts for machinery, of vegetable fibers, in part of rubber or plas-

tics under item 358.10 of the Tariff Schedules of the United States (TSUS), and assessed with duty at the rate of 16% ad valorem. The importers (appellees) claimed that the merchandise is properly dutiable at 8.5% ad valorem under item 692.25, TSUS, as other parts of motor vehicles.

Relevant tariff provisions are as follows:

*Classified:*
Schedule 3, part 4, subpart C:
Belting and belts, for machinery:
Of vegetable fibers, or of such fibers and rubber or plastics:
* * * * * *
358.10    In part of rubber or plastics ..16% ad val.
*Claimed:*
Schedule 6, part 6, subpart B:
Motor vehicles (except motorcycles) for the transport of persons or articles:
* * * * * *
Motor vehicles specially constructed and equipped to perform special services or functions, such as, but not limited to, fire engines, mobile cranes, wreckers, concrete mixers, and mobile clinics ........................ * * *
* * * * * *
Chassis, bodies (including cabs), and parts of the foregoing motor vehicles:
* * * * * *
Other:
* * * * * *
692.25    Other ................. 8.5% ad val.

The court below concluded that the imported merchandise was designed and used to function as more than belting for machinery and sustained the protest claim under TSUS item 692.25.

The facts, as established by the testimony and exhibits adduced, are not in dispute and were summarized by the court below:

The material from which the imported merchandise was processed in Canada was made by a rubber company following * * * [appellees'] specifications for a "low temperautre stock because most of the machines are going into arctic areas." We measure exhibit 1, the sample in evidence, to be about five-eighths of an inch thick. The core of exhibit 1, a woven ply veg-

1. Flex Track Equipment, Ltd. v. United States, 65 Cust.Ct. 119, C.D. 4063 (1970).

etable fiber, is covered with rubber. The material was ordered in a 15-inch width for use with * * * [appellees'] Nodwell RN110 and 75 tracked vehicles. Similar material was also ordered in other widths, depending on the weight and size of the vehicle for which intended.

When the material is received in Canada from the rubber company, it is processed to fit a particular size tracked vehicle. In this case, the material was cut in Canada to specific lengths, either 33 feet and 3 inches or 33 feet and 6 inches (the witness was not sure which, but knew it was a specified length), and $9/16$-inch holes were punched throughout the width and length of the cut belting. The holes are evenly spaced, $45/16$ inches apart, three across the width, in three rows of 82 holes throughout the length. The merchandise (hereinafter referred to as articles), as imported, was in the condition cut to specific length and with holes punched as described. The length, number and spacing of the holes, all of which may vary according to the size vehicle for which intended, fit the imported articles for use on a Nodwell RN110 motor vehicle * * *.

The Nodwell RN110 * * * [seems] to be a large heavy-weight specially constructed motor driven vehicle. It features a cab for the driver and his instruments. The cab stands mounted high on the front end of the vehicle which appears to have four inside and four outside ground level wheels on each side. At the rear of the vehicle, on each side, there is a drive sprocket (a wheel with teeth to engage links as on a bicycle). The drive sprocket is off the ground, to the rear of the eight ground wheels, so that it sits center between the inside and outside ground level wheels. An off ground turning wheel is similarly situated at the front end of the vehicle. Laced around the front turning wheel, rear drive sprocket, and the inside and outside ground wheels, on each side of the vehicle, are crawler treads or

tracks assembled, in part, from the imported articles.

It takes two of the approximately 33-foot imported flexible lengths, punched with holes, to make one track assembly, plus 164 backing plates, 492 track bolts and nuts, and 82 grouser bars (cleats on a tractor wheel or track for increasing traction, Webster's Third New International Dictionary, 1968 edition). The track is assembled in the following manner described by Mr. Agassiz:

To assemble the track it would be necessary to lay two belts out on a surface, a flat surface, whether the ground or an assembly table, and putting, inserting the backing plate underneath the track tread or belt and placing the grouser bar on top of the track tread or belt and then inserting the bolts through each one of the three holes in each track tread and tightening same. Then, to install the track assembly on the tracked vehicle it would be a matter of turning the whole assembly over, rolling the track vehicle onto the track assembly, and then manhandling the track into position and making, finally—pulling the track together finally with a track mounting tool or a comealong. And the track then is spliced together with the use of an overlap splice by overlapping three holes and bolting through with a longer bolt, bolting through a backing plate, belt, and grouser bar.

The steel grouser bar, bolted to the imported articles, hereinafter also called treads (exhibit 3 shows the impression of the grouser bars and backplates), spans the width of both treads and bridges the space between the two treads. The grouser bars are the connection that holds the two treads together and the bars are calibrated by the holes in each tread to engage at center (where the bar bridges the space between the treads), with the pitch of the drive sprocket at the rear of the vehicle. The grouser bars also

pass around the front turning wheel, and give the track motion as the vehicle moves with one tread of the assembly passing around the inside wheels and other tread passing around the outside wheels on each side of the vehicle. The imported articles thus give flesh and body to a skeleton outlined by the grouser bars, backplates, bolts, and nuts in an assembled crawler track.

Nodwell RN110's are off highway motor vehicles designed to an extremely low ground pressure to move over soft marshy ground and snow. Neither of the witnesses knew of any other purpose or use for the imported articles, in the condition imported (other than one that might be improvised), than to flesh out the track assembly described above. Mr. Agassiz acknowledged that he referred to the material from which the imported merchandise was processed as belting or tread, and that the imported merchandise is sold as "belts", "track treads", or "track belts".

In overruling the classification of the instant merchandise as belting for machinery under item 358.10, TSUS, the court observed that if the importations are belting for machinery and parts of motor vehicles, the provision for belting for machinery would prevail under headnote 10(ij) which provides:

> * * * a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

This would be so, the court found, since the classification "belting for machinery" describes the "part" sufficiently to prevail over the provision for such "part." The court was of the view, however, and we must agree, that the imported articles, designed as they are for a specific purpose, are more than belting for machinery within the commonly accepted meaning of that term, reasoning that

* * * the record nevertheless supports the fact that the imported articles are specially designed to do much more than transmit motion when used on the motor vehicle machinery. There is also the consideration that in the specially designed condition imported, the articles are shown to have no legitimate function on machinery, except to be assembled with other parts to make a crawler track or tread for machinery. * * * When assembled with the other part, the imported articles incidentally function not only to transmit motion, as customs found, but to also give the motor vehicle support, traction, and stability. All those functions are equally necessary for the motor vehicle to pass over soft marshy ground and snow as intended. The imported articles having been specially designed to do more than simply transmit motion, they are not classifiable as belting for machinery.

We think it clear that the record discloses facts inconsistent with the collector's classification and that such facts are of sufficient moment to support the finding of the Customs Court. The record abundantly supports the conclusion that the imported track tread did much more than transmit motion when applied to and used as a crawler track. We agree with the court that the imported articles were designed and processed to incorporate features that serve multiple functions which, in the language of that court, "in sum, characterize the particular article more than any single feature or function." It is well settled that articles which in fact constitute more than other articles are not classifiable under provisions applicable to those other articles. E. Green & Son (New York), Inc. v. United States, 450 F.2d 1396, 59 C.C.P.A. ——, C.A.D. 1032 (1971); United States v. New York Merchandise Co., 435 F.2d 1315, 58 C.C.P.A. 53, C.A.D. 1004 (1970).

In our view, the track tread became more than belting when it was punched with holes at predetermined intervals to

**152**

accommodate grouser bars. The article was subjected to a process of manufacture which invested it with new functions. This transformation made it more than the article in its original state. E. Green & Son (New York), Inc. v. United States, supra; United States v. A. W. Fenton Co., 49 C.C.P.A. 45, C.A.D. 794 (1962); United States v. Sutherland International Despatch, 21 C.C.P.A. 264, T.D. 46790 (1933).

In the *Green* case, this court decided that cast-iron economizer tubes designed to transfer heat were more than pipes or tubes. In *Green* the record established that the tubes conveyed water, yet their primary function was to heat or cool the water flowing therethrough. Similarly, in the present case, the imported track treads do transmit motion; however, they also give the motor vehicle support, traction, and stability.

We have examined the cases cited by appellant where the manufacturing process was merely to cut the belts to length, whereas in the instant case the track tread material is not only cut to length but also is punched with holes to receive grouser bars. The record here reveals that when the imported material is cut to length and holes drilled in it, it is of no further use "except what it was cut or fabricated for." That use (i. e., as track treads on motor tracked vehicles) is more than the use associated with mere belts or belting.

We are persuaded that the Customs Court did not commit reversible error in holding that the instant track tread with holes punched at predetermined distances for backplates and grouser bars was more than belting for machinery.

Predicated upon the testimony and the exhibits, the court below has made a finding that the track tread material is specially designed to do more than simply transmit motion and is not classifiable as belting for machinery. In our view this finding of fact is not without substantial evidentiary support. We, therefore, affirm.

Affirmed.