In view of the foregoing, the judgment of the Customs Court is *reversed*.

511 F. 2d 568

POLLARD BEARINGS CORPORATION *v.* THE UNITED STATES

(No. 74–13, C.A.D. 1146)

United States Court of Customs and Patent Appeals, February 27, 1975

*Joseph F. Donohue* and *John P. Donohue*, (Donohue and Shaw) attorneys of record, for appellant.

*Carla A. Hills*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Robert B. Silverman* for the United States.

[Oral argument on October 3, 1974, by Joseph F. Donohue for appellant and by Robert B. Silverman for the United States]

Before MARKEY, *Chief Judge*, RICH, BALDWIN, LANE and MILLER, *Associate Judges*

BALDWIN, *Judge*.

 This is an appeal from the judgment of the United States Customs Court, 71 Cust. Ct. 1, C.D. 4461, 363 F. Supp. 1191 (1973),

overruling appellant's claim for classification and holding that the imported merchandise had been properly classified by the collector of customs. We reverse and remand.

The merchandise, invoiced as "Fan & Pump Shaft Bearing Assemblies—Auto Parts," was classified under item 660.90, Tariff Schedules of the United States (TSUS), as parts of pumps for liquids and assessed with duty at the rate of 12 per centum ad valorem. These fan and pump shaft bearing assemblies (FPS bearings) are also known in the trade as integral shaft bearings.

Appellant claims that the imported merchandise is properly classifiable under either item 660.52 TSUS as parts of piston-type engines at 8.5 per centum ad valorem or item 692.25 TSUS as parts of motor vehicles at 8.5 per centum ad valorem.

Appellee, in its answer to appellant's complaint, asserted an alternative claim that, if the merchandise was not properly classifiable under item 660.90 TSUS, classification would be proper under item 680.35 TSUS as ball or roller bearings at 3.4 cents per pound plus 15 per centum ad valorem. Appellee stated that the merchandise is more specifically described in item 680.35 TSUS than in items 660.52 or 692.25 TSUS.

The statutes involved are:

*Classified under:*

| | | |
|---|---|---|
| 660.90 | Pumps for liquids, whether or not fitted with measuring devices; liquid elevators of bucket, chain, screw, band, and similar types; all the foregoing whether operated by hand or by any kind of power unit, and parts thereof_____ | 12% ad val. |

*Claimed under by appellant:*

| | | |
|---|---|---|
| 660.52 | Parts of piston-type engines other than compression-ignition engines_____ | 8.5% ad val. |
| or | | |
| | Chassis, bodies (including cabs), and parts * * * motor vehicles: | |
| | * * * * * * * | |
| 692.25 | Other _____ | 8.5% ad val. |

*Appellee's alternative claim:*

| | | |
|---|---|---|
| 680.35 | Ball or roller bearings, and parts thereof_____ | 3.4¢ per lb. + 15% ad val. |

The court summarized the physical and testimonial evidence of record as follows:

The imported steel shaft bearings (exhibit 2), * * * which have a steel shaft approximately six inches long, are provided with a steel bearing collar upon which the shaft serves as an axis in spinning. Exhibit 3 is an article known in the motor trade as a water pump illustrating "quite clearly the manner in which the [imported] bearings are installed in the water pump as it is sold

to the automotive trade" * * *. The main visible components of exhibit 3 are: (1) a cast-iron housing with a neck of sorts and finger-like extensions for hose attachments and holes for bolting it to the engine block; (2) the shaft bearing which is pressed or inserted into the neck of the housing so that it is completely enclosed by the housing except at one end; (3) a circular disk called an impeller that is pressed on the shaft at the end which faces on the engine block; (4) a so-called fan hub with four holes that is pressed on the shaft end that protrudes from the neck of the housing. Exhibit 3, in the condition assembled, is sold to the automobile trade as a water pump ready to be attached to the engine block.

Exhibit 4 is a mock-up of the front end of a motor vehicle illustrating the manner in which a pulley with four holes (exhibit 5) is fitted on the fan hub that is pressed on the imported shaft; a fan with a neck and hub with four holes, all one piece, is positioned on the short end of the shaft that protrudes through the pulley so that it is properly aligned with the pulley in a fashion that the fan and pulley can be and are bolted through the four holes to the fan hub. The mock-up also illustrates additional pulley attachments to the crank-shaft, air conditioner, air injection pump, generator, and power steering components of a motor vehicle. There are belts passing around the fan hub pulley (four belts on the illustrative exhibit) to the various other pulley connections; working off power that comes from the crank-shaft.[5] The pulley belts transmit the power necessary to operate the various components including the imported integral pump shaft bearing which, as it spins, operates the water impeller and the fan.

Plaintiff's witnesses testified that the bearing incorporated in the pump is rotated by the belts that pass from the crank-shaft pulley to the pulley mounted on the fan hub of the bearing. In rotating, the bearing transmits power to the water pump impeller and also drives the fan. The bearing additionally takes the load created by the power that is transmitted to other components of a motor vehicle such as an air conditioner, air injection pump, generator, and power steering. Plaintiff's witnesses expressed the opinion that all those functions are coequal in a motor vehicle in which those auxiliary components are present.

Failures associated with integral shaft bearings, in the experience of the witnesses for both sides, involved the shaft being broken at the load-bearing fan hub and under stress of supporting the fan and taking the radial load arising from the various belt drives. To forestall such failures the shaft of the imported integral shaft bearings were designed and strengthened to accept the pulley-fan attachment and the increased loads created by the power transmitted to the other components, without breaking.

The water pump (exhibit 3) is sold as an auto water pump but, in the opinion of plaintiff's witnesses, it is not a complete pump until it is bolted to the engine block. That opinion brought them to conclude that exhibit 3 is less than a pump, but they also concluded that the imported bearings were more than part of a pump because the bearing functions as a support bracket for the fan and also drives the auxiliary components. The imported shaft bearings

[5] Exhibit 7 is an engine belt and pulley chart showing the manner in which the various pulley and belt attachments can be arranged should a purchaser of a motor vehicle opt for one or more of the components requiring a pulley attachment. The generator, water pump and crankshaft pulleys are basic in all motor vehicles that have water-cooled engines. Exhibit 8 is a sample of a shaft bearing used to support the fan in a motor vehicle with an air-cooled engine.

are sold to manufacturers of auto water pumps. A generator, water pump and crankshaft are basic components of all motor vehicles with water-cooled engines. Air conditioners, power steering and air injection pumps are optional equipment in motor vehicles. The water pump in a water-cooled engine functions continually but a fan clutch will stop the fan at certain speeds while the shaft bearing continues to spin the impeller of the pump.

Defendant's witness expressed the opinion that the primary function of the imported bearings was the water pump function because the fan clutch can cut the fan off and the components not associated with the pump can be powered directly off the crankshaft drive.

The court below, in overruling appellant's claim for classification, concluded that the imported bearings were "most immediately components or parts of" a water pump, rather than parts of an engine or motor vehicle. Additionally, the court found the imported bearings not to be "more than" parts for water pumps, as alleged by appellant, since the bearings did not have two coequal functions, but rather one primary function as a component for a water pump. The court stated:

Based on the physical and testimonial factual evidence of record, I find that the imported integral shaft bearings are a component, primarily designed for an auto water pump and that without the integral shaft bearings there would be no auto water pump as such. While plaintiff's witnesses were of the opinion that the imported integral shaft bearings are designed to perform coequal functions in a motor vehicle, defendant's witness had a contrary opinion and the physical evidence which weighs greater established that the integral shaft bearings are primarily designed to serve as a component of an auto water pump. In the condition imported, the integral shaft bearings have, not two coequal functions, but one primary use or function, namely, as a component for an auto water pump.

Thus, the court in holding the original classification correct, found it unnecessary to consider appellee's alternative claim for classification.

### OPINION

At the outset we note that ▮▮▮ "this court will not reverse the lower court on a question of fact except where the findings are * * * clearly contrary to the weight of the evidence." *United States* v. *F. W. Myers & Co.*, 45 CCPA 48, C.A.D. 671 (1958); *Northam Warren Corp.* v. *United States*, 60 CCPA 117, C.A.D. 1092, 475 F. 2d 647 (1973). Thus, since ▮▮▮ "[i]t is well settled that articles which in fact constitute more than other articles are not classifiable under provisions applicable to those other articles", *United States* v. *Flex Track Equipment*, 59 CCPA 97, C.A.D. 1046, 458 F. 2d 148 (1972), the question before us is whether the finding of the Customs Court, that the imported bearings are not "more than" parts for water pumps, is clearly contrary to the weight of the evidence. We answer this question in the affirmative.

Not only appellant's two witnesses, but appellee's sole witness ac-

knowledged the facts that rotating the fan is an "important function" performed by the imported bearings and such rotation is *essential* to the proper functioning of an automobile. In acknowledging these facts, appellee's witness did limit his testimony to the situation wherein the fan is rotating to provide cooling to the automobile's radiator. He pointed out that the fan does not rotate 100 percent of the time since the fan is equipped with a fan clutch arrangement which enables the fan to stop rotating while the water impeller rotates continuously. However, we do not find that the intermittent operation of the fan detracts from the importance of the fan rotating and fan supporting functions of the imported bearings. Additionally, we note that both appellant and appellee agree that the imported bearing supports the fan clutch arrangement which enables the intermittent operation of the fan.

Furthermore, appellee's witness, as did one of appellant's witnesses, testified that the end of the imported bearing which supports the fan has the greatest stress exerted upon it and is the end of critical importance with respect to the strength of the bearing. Thus, the imported bearings are designed in accordance with the stresses resulting from the fan supporting and rotating function, rather than from the stresses resulting from the water impeller supporting and rotating function of the bearing.

Therefore, in view of the foregoing, we agree with appellant that the weight of the evidence clearly establishes that the imported bearings do not have one primary use or function, but rather have a dual primary function—supporting and rotating both the fan and water impeller—which renders the imported bearings "more than" parts for water pumps.*

We do not find *United Carr Fastener Corp.* v. *United States*, 54 CCPA 89, C.A.D. 913 (1967), or *Trans-Atlantic Co.* v. *United States*, 60 CCPA 100 C.A.D. 1088, 471 F. 2d 1397 (1973), to be controlling. The instant fan rotating and supporting function is not an "auxiliary" function as was the case in *United Carr*, supra; nor do the facts of the case at bar show the imported merchandise to possess a single primary function as was the case in *Trans-Atlantic*, supra.

However, appellant had a dual burden of proof to produce substantial evidence tending to prove not only that the original classification was incorrect—which we hold has been done—but also that one of its claimed alternative classifications was proper. *United States* v.

---

*Although we find it unnecessary to decide whether the other function of transmitting power to the air conditioner, air injection pump, generator, and power steering, is likewise another primary function, we note that appellee's sole witness testified that "it is a very usual function of an integral shaft bearing to carry the load and transmit the power to the generator."

*New York Merchandise Co.*, 58 CCPA 53, C.A.D. 1004, 435 F. 2d 1315 (1970). Since the Customs Court did not find it necessary to consider either the second part of appellant's burden or appellee's asserted alternative claim, on which both appellee and appellant submitted a substantial amount of evidence, we believe the Customs Court should be provided an opportunity to express its views on these issues.

Therefore, the case is remanded to the Customs Court for further proceedings not inconsistent with this option.