AMICO, INC.

v.

UNITED STATES.

C.D. 4723; Court No. 73–11–03155.

United States Customs Court.

Dec. 9, 1977.

Tompkins & Davidson, New York City (Allerton deC. Tompkins, New York City, of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (Sheila N. Ziff, trial atty., New York City), for defendant.

*On Plaintiff's Motion and Defendant's Cross-Motion for Summary Judgment*

MALETZ, Judge:

This action which is before the court on cross-motions for summary judgment involves the dutiable status of articles imported from Japan via the port of Philadelphia during the latter part of 1972 which were invoiced as "Lucite Musical Dancing Couple in Plastic Dome" with or without additional words of description. The article itself is composed of a music box mechanism contained in a transparent acrylic box-like container with brass fittings, on top of which is a clear plastic dome covering two miniature figures on a metal pin representing a miniature man and a woman.

The imported articles were classified by the government as toys having a spring mechanism under item 737.80 of the Tariff Schedules of the United States (TSUS) as modified by T.D. 68/9 and assessed duty at the rate of 22% ad valorem.

Plaintiff challenges this classification and contends that the imported articles are properly classifiable as music boxes under item 725.50, TSUS, as modified by T.D. 68/9, and thus dutiable at the rate of 8% ad valorem.

Alternatively, plaintiff claims that the articles should have been severed for classification purposes and that the music box portion, with or without the plastic dome, should have been classified as music boxes under item 725.50, while the figures, with or without the plastic dome, should have been assessed as dolls at 17.5% ad valorem under item 737.20, as modified by T.D. 68/9.

The relevant provisions of TSUS are as follows:

*Classified under:*

*Schedule 7, Part 5, Subpart E:*

*Subpart E headnotes:*

1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules, * * *

* * * * * * *

2. For the purposes of the tariff schedules, a "*toy*" is an article chiefly used for the amusement of children or adults.

* * * * * * *

Toys, and parts of toys, not specially provided for:

737.80    Toys having a spring mechanism ................... 22% ad val.

Claimed under:

Schedule 7, Part 3, Subpart A:

Subpart A headnotes:

1. This subpart does not cover—

(i) articles which are toys (see part 5 of this schedule);  * * *

* * * * * * *

Other musical instruments:

725.50     Music boxes ................. 8% ad val.

Alternatively claimed under:

Schedule 7, Part 5, Subpart E:

* * * * * * *

737.20     Dolls, and parts of dolls including
doll clothing .............. 17.5% ad val.

To the extent relevant to the present motion, the record consists of the pleadings, three affidavits,[1] and two exhibits, one of which (exhibit 1) is a representative sample of the imported "Musical Dancing Couple," while the second (exhibit 2) is a 1972 sales catalogue of the plaintiff company.

From an examination of the sample submitted by plaintiff, it appears that the bottom portion of the merchandise consists of a musical mechanism encased in a clear lucite box almost two and one quarter inches high, with metal fittings. Two small figures, almost two inches long, representing a dancing couple in evening attire, are attached to a metal shaft which is inserted through an opening in the top of the lucite box and touches a small metal platform that is secured to the musical movement. The figures are enclosed in a transparent plastic dome, approximately three inches high, which fits on top of the music box. The music box, the figures and the dome are not permanently affixed and may be disassembled.

The musical movement, per se, consists of a metal cylinder with tiny knobs projecting from the surface, two gears and a metal disc with extended strips or teeth. When the movement is put in operation by winding a spring mechanism and pulling a small lever, the cylinder and gears revolve and the metal teeth or strips strike the projecting knobs to reproduce a melody.

At the same time, the metal platform, which is activated by a moving gear attached to the cylinder, moves up and down causing the metal shaft to which the figures are attached to bob up and down. This bobbing action, in turn, gives the figures, whose legs are in motion, the appearance of dancing to the music. The article is imported in a cardboard box bearing the words "Clear Tone Musical Dancing Couple" and "Lucite Handicraft."

I

Against this background, the first issue is whether the imported articles were properly classified by the government as toys. Arguing that the articles are not so classifiable, plaintiff has appended to its motion for summary judgment the three aforementioned affidavits. First, the affiant, Mrs. Ruth Arch, a Philadelphia housewife, stated that she had given the imported articles to her daughters' teenage girlfriends as "Sweet Sixteen" party favors. Stating that she had observed many of the recipients in their homes, she found (Affidavit, p. 2):

> * * * that each girl enjoyed and used her * * * Music Box for pleasure, primarily for its pleasant music appropriate for teenagers, and never was it used for amusement * * * They took delight in playing the music * * * and in expressing their satisfaction for the pleasure (not amusement) it gave to them and * * * others * * *.

Mr. Mickelberg, the vice president in charge of sales of the plaintiff company, stated in his affidavit that the articles were designed to appeal to the romantic inclinations of teenage girls. He said that he had given the article as gifts to the teenage daughters of his friends and relatives and added that he had never known or seen this music box used for amusement, particularly

1. The affidavits were executed by Ruth Arch, a Philadelphia, Pa. housewife who purchased, used and observed the use of the imported articles; Stephen R. Mickelberg, vice president in charge of sales of the plaintiff company; and Lorraine Squaresky, assistant to the president of the plaintiff company and supervisor in charge of importing and ordering foreign merchandise.

the kind of amusement provided by playthings. Mr. Mickelberg further stated (Affidavit, pp. 5–6):

The No. 6145 [the model in issue here] plays a simple waltz, "Dance Ballerina", which was popular in the early 1970's among young ladies, particularly teenagers who enjoy romance and waltz music or old-fashioned dancing. The ornamental revolving (dancing) figures simulate appropriate romantic motion related to the waltz music. (They serve a purpose which can be likened to the purpose served by appropriate costumes and stage settings for an operatic or musical comedy performance). All of these combined things cause the entirety to appeal to teenage young ladies during the time in their lives when romance is important. Our sales were successfully directed to them. Without the dancers, the item would not have the same appeal to this group as a music box. Moreover, the top portions of this article (dancers under a dome) have no useful commercial application when separated from the balance (acrylic container with brass posts). The entirety is designed to be used as an entirety for sale to a particular class of people (teenage girls). If the said top portion were removed, the said bottom portion by itself is not saleable to teenage girls.

Similarly, Ms. Lorraine Squaresky, assistant to the president of the plaintiff company, after first noting that she had seen the article in operation in the homes of friends and relatives, stated that: "It is self-evident that it is not to be played with like a plaything; its purpose is not for the amusement of either children or adults * *." (Affidavit, p. 4.) Ms. Squaresky also stated in her affidavit (pp. 2–3):

Attached hereto and marked Exhibit 2 is the 1972 Sales Catalogue issued by Amico, Inc. to the trade at that time for sales purposes. I assisted in the preparation of this catalogue by editing the material to be used, setting up the format and assisting with descriptions. The said No. 6145 Music Box appears on page 7 of this catalogue as "The Dancers". This page is entitled "Musical Gifts by Amico" and depicts 8 different music boxes then being handled by Amico Inc., each of which is purchased and is saleable because its music is directed toward, and the entirety appeals to a certain class of people who enjoy music box music, such as children (The Musical Ferris Wheel Bank with children's music and music box # 2210 is designed for children. It also has usefulness in teaching a child to save money), female adults who like birds (# 6146 which plays a bird song), lovers (# 6061 and # 6063, each of which plays a soft romantic song), dancers, particularly teenage girls, the item in dispute (# 6145), adult females who enjoy popular tunes in novelty music boxes (# 6143, # 9822, # 9893). * * *

* * * * * *

The # 6145 music box was ordered because it was found to be desired by and appropriate for teen-age girls who liked romantic waltz-type music box music. The song played by the # 6145 mechanism "Dance Ballerina" was in 1972 popular and appropriate for young ladies. The attractive music box containing the mechanism was that time an unusual combination of clear transparent acrylic (a new plastic material at that time) and brass appealing to the eyes of young ladies, and the revolving figures simulated romantic motion pertinent to the waltz music. All of these things in combination resulted in an attractive music box having an appeal for teen-age girls at a time in their lives when romance was important. I know about such things because I have lived through such a period when I was a teenager.

Relevant in determining whether an article is chiefly used for amusement and thus classifiable as a toy is *United States v. Topps Chewing Gum, Inc.*, 440 F.2d 1384, 58 CCPA 157, C.A.D. 1022 (1971), where the court held that an object was a toy even if it was not a plaything if the purpose of the object was to give the same kind of enjoyment as playthings give, whether the object

was to be manually manipulated, used in a game or worn. More specifically in *Topps*, the appellate court concluded that objects variously labeled as "Wise Guy Buttons," "Smarty Buttons," and "Ugly Buttons" were properly classifiable as toys, stating (440 F.2d at 1385, 58 CCPA at 159):

> After noting that prior to the enactment of the TSUS a "toy" was defined as a child's plaything, the [trial] court cited *Wilson's Customs Clearance, Inc. v. United States*, 59 Cust.Ct. 36, C.D. 3061 (1967), for the proposition that the TSUS removed the limitation regarding the users' age but left the requirement that the object be a plaything. We think this conclusion is unsupported by the wording of the TSUS or by case authority. In the *Wilson's* case the court did not hold that to be a toy an object had to *be* a plaything, but that the "character of amusement involved was that derived from an item which is essentially a plaything." *Id.* at 39. The court thus stressed the quality of mind or emotion induced by the object as controlling, and we think that is the best approach to interpreting the TSUS definition. *If the purpose of an object is to give the same kind of enjoyment as playthings give, its purpose is amusement, whether the object is to be manually manipulated, used in a game, or, as here, worn. We think the evidence is clear that the fun children derive from wearing the imported buttons is essentially the same kind of frivolous enjoyment they would derive from objects which we commonly think of as toys.* [Emphasis added.]

The parties agree that the sample in the present case is a potent witness. And with the teaching of *Topps* in mind, plaintiff contends that the sample demonstrates that the imported article is incapable of giving the same kind of enjoyment playthings give, while the defendant maintains that it is manifest from the sample that the pleasure teenagers derive from the operation of the article is essentially the same character as the amusement derived by children from playthings such as wind-up toys which move and emit sound when the spring

mechanism is wound. On this question, we must agree with the plaintiff. For an examination of the sample without more is persuasive that the importation does *not* give the same kind of "frivolous enjoyment" one would derive from objects commonly thought of as toys.

It is true that the government's classification enjoys the benefit of the presumption of correctness. However, this presumption of correctness may be overcome by the probative effect of the sample itself. E. g., *United States v. Bruce Duncan Co., Inc., et al.*, 50 CCPA 43, 46, C.A.D. 817 (1963). And on this score, the sample in the present case—a description of which has been set forth before—is sufficient by itself to overcome this burden. In addition, we have the uncontradicted affidavits of three persons making clear the kind of enjoyment teenagers obtain through use of the imported articles—an enjoyment which the court must conclude is scarcely the same kind of enjoyment as playthings give.

## II

It is of course basic that even though plaintiff has proven the government's classification to be erroneous—as it has—plaintiff has the further burden of proving the correctness of its own claimed classification. This being the case, plaintiff must show that the imported article is a "music box" within the meaning of item 725.50. Defendant, on the other hand, claims that the article is "more than" a music box. On this aspect, plaintiff argues that the article is nothing more than an attractive music box and that the dancing couple merely enhances the features of attractiveness, making the article suitable as a music box to a particular class of people. In short, according to plaintiff, the article has no secondary function which might warrant the application of the "more than" theory. Defendant, to the contrary, argues that the importation is not just another version or model of a music box, but rather than it is *more* than a music box by reason of the presence of the dancing couple, and that the article therefore is not classifiable as a music box under item 725.50, as claimed by plaintiff.

"It is well settled that merchandise which in fact constitutes more than a particular article or which has *additional nonsubordinate* or *co-equal* functions is not classifiable as that article." [Emphasis added.] Sturm, *A Manual of Customs Law* (1974), p. 298, and cases cited. Put otherwise, "[t]here has recently been a spate of cases in the Customs Court involving the 'more than' doctrine. It has been applied in cases where the article was found to have two coequal functions or *where a second function was not incidental, subsidiary or auxiliary.*" Sturm, *A Manual of Customs Law* (Supp. 1976), p. 72.

The question, therefore, is whether the dancing couple provides an incidental or subsidiary function, as argued by plaintiff, or whether the dancing couple provides a nonsubordinate function, i. e., a function which is not incidental or subsidiary, as argued by defendant. For the reasons that follow, the court concludes that the function of the dancing couple is not incidental or subsidiary and that the imported articles are therefore "more than" music boxes.

The question of what constitutes a music box has been before this court on several occasions. In *I. Pukel v. United States,* 286 F.Supp. 317, 60 Cust.Ct. 672, C.D. 3497 (1968), the court considered the common meaning of that term and stated (p. 319, 60 Cust.Ct. p. 675):

> * * * We conclude that a "music box" is a small mechanical movement playing tunes automatically, which is incorporated into a box, case, or cabinet. Instructive is the following definition set out by this court in *Cody Manufacturing Co., Inc., et al. v. United States,* 33 Cust.Ct. 377, 378, Abstract 58428 (1954), which was accepted in the majority opinion in *United States v. Cody Manufacturing Co., Inc., et al.,* 44 CCPA 67, 70, C.A.D. 639 (1957):

2. The appellate court, in the cited *Cody* case, *supra,* 44 CCPA 67, also noted (p. 72):

> The intended purpose of music boxes, with which we are primarily concerned here, as is obvious from the name itself, and as shown by the definitions quoted, is to play music, and it would seem that only those elements

The term, "music box," as defined by leading dictionary authorities, is a case or a cabinet, housing a mechanism that plays tunes or melodies automatically. Specifically, Webster's New International Dictionary defines "music box" as "a box or case containing apparatus moved by clockwork so as to play certain tunes automatically." Funk & Wagnalls New Standard Dictionary embodies the definition of "music box" under the word "musical," wherein "m.box" is defined as "a case or cabinet containing a mechanism contrived to reproduce melodies, and frequently possessing additional musical effects. The notes are reproduced by the vibrations of steel teeth struck by minute pegs projecting from the surface of a revolving cylinder." [2]

It is patent that only the lower music box portion of the importation responds to the quoted definition and that the dancing couple is without its scope. Furthermore, the probative effect of the sample exhibit itself is such as to prove the article is more than a music box. For even a cursory observation of the exhibit compels the conclusion that the dancing figures are neither incidental nor subordinate to the music box component, but are at least of equal importance to the overall design, appearance, and operation of the imported article.

The importance of the dancing couple to the successful marketing of the item is attested to in plaintiff's affidavits accompanying its motion (portions of which have been quoted previously) as well as in an accompanying sheet from plaintiff's 1972 sales catalogue (exhibit 2B, p. 7). Significantly, the descriptive literature on that page does not refer to the model in issue, or any part thereof, as a music box or a musical article (as it does with all the other items shown on that sheet) but states only—

> which are essential to the production of that result can properly be considered parts of music boxes. The plastic figurines here contribute nothing whatever to the playing of the music. The music boxes play exactly the same tune in the same way whether the figurines are attached to them or not.

THE DANCERS
Watch our couple whirl under their protective dome. 5" high. No. 6145

In other words, a major selling feature of the article consists of the dancing couple and dome components, not the music box portion. Under such circumstances, the major contribution of the dancing couple to the uniqueness and distinctiveness of the entire article, as well as its marketability, is unquestioned.

Accordingly, it must be concluded that the articles in controversy are more than music boxes and are not classifiable under item 725.50. And as previously noted (Sturm, *A Manual of Customs Law* (1974), p. 298) it is well settled that if a particular import in fact constitutes more than an article provided for in the tariff classification schedules, it is not classifiable under the provision applicable to the latter article. See, e. g., *Pollard Bearings Corporation v. United States,* 511 F.2d 568, 62 CCPA 61, C.A.D. 1146 (1975); *United States v. Acec Electric Corp.,* 474 F.2d 1009, 60 CCPA 113, C.A.D. 1091 (1973); *United States v. Flex Track Equipment, Ltd., et al.,* 458 F.2d 148, 59 CCPA 97, C.A.D. 1046 (1972); *United States v. New York Merchandise Co., Inc.,* 435 F.2d 1315, 58 CCPA 53, C.A.D. 1004 (1970); *United States v. A. W. Fenton Co., Inc.,* 49 CCPA 45, C.A.D. 794 (1962).

It is also noted that combination articles which, as imported, incorporate a music box or music box mechanism, have been held to be more than music boxes for tariff classification purposes. *Thorens, Inc. v. United States,* 31 CCPA 125, C.A.D. 261 (1943) (toilet paper holder equipped with a music box mechanism); *Lador, Inc. v. United States,* 4 Cust.Ct. 123, C.D. 304 (1940) (music box Christmas tree stands).

The cases relied upon by plaintiff have no bearing on the issues at hand as they involve merchandise consisting essentially of music boxes which possess, in some instances, other minor incidental or subordinate functions, as in *United States v. Borgfeldt & Co.,* 13 Ct.Cust.Appls. 620, T.D. 41461 (1926) (music boxes with letters of the alphabet or pictures printed on the box);

*Henry Coehler Co., Inc. v. United States,* 26 Cust.Ct. 406, Abs. 55455 (1951) (music box in the shape of a church); and *G. W. Sheldon & Co. v. United States,* 55 Treas.Dec. 1055, Abs. 8118 (1929) (miniature piano-shaped article containing a music box mechanism and also serving as a receptacle for jewelry or other small articles). See also *New York Merchandise Co., Inc. v. United States,* 62 Cust.Ct. 283, 290, C.D. 3746 (1969), *aff'd, United States v. New York Merchandise Co., Inc.,* 435 F.2d 1315, 58 CCPA 53, C.A.D. 1004 (1970).

In *J. C. Robold & Co. v. United States,* 43 Treas.Dec. 18, T.D. 39396—G.A. 8596 (1923), merchandise consisting of a mechanical lifelike singing bird in a brass cage containing a music box which, when operated, caused the bird to open its beak, move its head and tail, and emit trilling sounds, was held to have been properly classified under the Tariff Act of 1930 as a musical instrument rather than as manufactures of metal, as claimed. However, the issue in *Robold* was entirely different than the issue in the present case. For in *Robold* the sole issue was whether the article responded to the definition of a musical instrument although it did not emit a continuous melody and a chromatic scale could not be played upon it.

## III

This brings us to plaintiff's alternative claim that the articles should have been severed for classification purposes and that the music box portion, with or without the plastic dome, should have been classified as music boxes under item 725.50, while the figures, with or without the plastic dome, should have been assessed as dolls under item 737.20. On this issue, both parties agree that the importations are entireties for tariff purposes. In fact, plaintiff specifically states in its brief (pp. 10–11) that the merchandise should be classified as an entirety but adds (Brief, p. 10):

We make an alternative claim for severance only because the appellate court in the case of *United States v. Cody Manufacturing Co., Inc.,* 44 CCPA 67, C.A.D. 639 (1957), held that dancing dolls (de-

signed to be assembled after importation with certain domestic articles to form an article very much like the merchandise herein), very similar to the dancing figures on the articles in litigation, should be classified as dolls, and not as *"parts"* of music boxes.

That *Cody* decision *did not* involve the question of entireties, and everything said by the court in connection with the completed article (with which the dancing dolls were used) is *dicta.* The *Cody* decision was predicated only on the conclusions that said dancing dolls were not *parts* (of music boxes) because they were "not essential to the operation" of the completed mechanism, nor "contribute in any way to the production of music"; also that there was a specific provision in the Tariff Schedules for "dolls".

Said *Cody* decision involved entirely different legal issues and should not control the instant litigation. However, should this court find to the contrary, we make an alternative claim for severance. [Emphasis in original.]

The court agrees with the parties that the decision in *Cody* dealt with a different issue and is not applicable here on the question of entireties. The *Cody* case involved musical movements, figurines, brass tubes, and blocking screws which, the court noted (44 CCPA at 68), did "not, as imported, constitute unitary devices but  *  *  * [were] distinct and disconnected." After importation, the items were assembled with domestically produced music boxes to form an article somewhat similar to the instant merchandise. The question presented was whether the figurines, tubes, and screws were properly classifiable as dolls, as assessed, or as parts of music· boxes, as claimed. The case turned on the application of the principle governing classification of merchandise as "parts" of an article.

In the present case, the issue presented and the applicable principle of statutory construction are materially different. The question before the court, which is whether or not the articles as imported are complete tariff entities, is governed by the doctrine of entireties.

Further, on the question of entireties, it is fundamental that an article composed of separate components imported together as a physical unit or a set is an entirety if the joined components form a new commercial article which possesses a new and distinct character of its own different from that of any of its parts. E. g., *J. C. Penney Purchasing Corporation v. United States,* 77 Cust.Ct. 48, C.D. 4671 (1976); ·*Mattel, Inc. v. United States,* 76 Cust.Ct. 84, C.D. 4639 (1976); *Mitsui & Co. (U.S.A.), Inc. v. United States,* 70 Cust.Ct. 53, C.D. 4407 (1973); *Sherriff-Guerringue, Inc. v. United States,* 62 Cust.Ct. 711, C.D. 3852 (1969); *V. Alexander & Company, Inc. v. United States,* 59 Cust.Ct. 510, C.D. 3212, 276 F.Supp. 573 (1967).

Tested by these standards, it is clear that the imported articles here involved are entireties. The music box, dancing couple, and dome components in combination form a new article possessing a distinctive character different from that of its parts.

It follows that the merchandise is not severable for tariff classification purposes and that plaintiff's reluctantly proffered alternative claim for separate classification of the components must fall.

## IV

In summary, the court holds (1) that the imported articles were erroneously classified by the government as toys; (2) that the articles are not classifiable as music boxes, as claimed by plaintiff, but are "more than" music boxes; and (3) that the articles are entireties and hence not severable for classification purposes.

For the foregoing reasons, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, and the action is dismissed without affirming the government's classification.