PHARMACIA LABORATORIES, INC., Appellant,

v.

The UNITED STATES, Appellee.

Appeal No. 79-23.

United States Court of Customs and Patent Appeals.

Nov. 15, 1979.

Murray Sklaroff, New York City, attorney of record for Pharmacia Laboratories, Inc., appellant.

Alice Daniel, Acting Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Customs Litigation Branch, Joseph I. Lieberman, Field Office for Customs Litigation, Susan C. Cassell, New York City, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NEWMAN,* Judges.

MARKEY, Chief Judge.

Pharmacia appeals from a judgment of the United States Customs Court, 82 Cust.Ct. ——, C.D. 4798, 470 F.Supp. 853

(1979), affirming the Government's classification of certain radioimmunoassay diagnostic test kits under item 799.00,[1] TSUS, rather than item 494.50,[2] TSUS. We affirm.

## Background

The kits, used to detect certain chemicals in blood serum, consist of four or five separate vials, one containing a radioactive substance and the others containing ingredients needed to conduct the test. Pharmacia protested classification under 799.00, but conceded that if classification as usefully radioactive chemical compounds under item 494.50 was not proper, the kits would be properly classified under item 799.00.

## Customs Court

The parties agreed that the kits were entireties for purposes of customs classification. Judge James L. Watson, held classification proper under TSUS item 799.00 on any of three grounds: (1) the kits are not chemical compounds within the meaning of "compound" in headnote 2 of schedule 4[3]

* The Honorable Bernard Newman, Judge, United States Customs Court, sitting by designation.

1. Schedule 7, Part 14, Tariff Schedules of the United States:

Any article, not provided for elsewhere in these schedules:
Which is similar in the use to which it may be applied to any article or articles enumerated in any of the foregoing provisions of these schedules as chargeable with duty:
     *    *    *    *    *    *
799.00 Other . . .

2. Schedule 4, Part 13, Subpart B:

494.50 Chemical elements, isotopes, and compounds, all the foregoing (except natural thorium and uranium in a metallic state, and except compounds of natural thorium and uranium), whether or not described elsewhere in this schedule, which are usefully radioactive . . .

3. Schedule 4 headnotes:
     *    *    *    *    *    *
2. (a) The term "compounds", as used in this schedule, means substances occurring naturally or produced artificially by the reaction of two or more ingredients, each compound—
(i) consisting of two or more elements,

(ii) having its own characteristic properties different from those of its elements and from those of other compounds, and
(iii) always consisting of the same elements united in the same proportions by weight with the same internal arrangement. The presence of impurities which occur naturally or as an incident to production does not of itself effect the classification of a product as a compound.
(b) The term "compounds", as used in this schedule, includes a solution of a single compound in water, and, in determining the amount of duty on any such compound subject to duty in this schedule at a specific rate, an allowance in weight or volume, as the case may be, shall be made for the water in excess of any water of crystallization which may have been in the compound.
3. (a) The term "mixtures", as used in this schedule, means substances consisting of two or more ingredients (i. e., elements or compounds), whether occurring as such in nature, or whether artificially produced (i. e., brought about by mechanical, physical, or chemical means), which do not bear a fixed ratio to one another and which, however thoroughly commingled, retain their individual chemical properties and are not chemically united. The fact that the ingredients of a product are incapable of separation or have been commingled in defi-

and thus do not come within the plain meaning of the claimed provision; (2) each kit consists of a number of vials containing separate and distinct compounds, and is thus too diverse to be properly described by the claimed provision; and (3) the non-radioactive compounds being as important to the results of the test as the radioactive compound, the latter should not determine classification of the kit.

### Issue

The sole question presented is whether the imported kits are classifiable as "usefully radioactive compounds." [4]

### OPINION

Pharmacia argues that because the kits in issue are bought, sold, stored, used and discarded as though they were radioactive compounds, they should be classified as such.

The United States argues that because (1) the kits have several components, only one being radioactive, (2) the function of the kits requires nonradioactive components, and (3) the kit does not meet the definition of "compound" in the TSUS, the kits are not classifiable under item 494.50.

Arguments (1) and (2) of the United States are but different statements of its position that the imported kits are "other than" or "more than" usefully radioactive compounds.

"[I]t is well settled that articles which in fact constitute more than other articles are not classifiable under provisions applicable to those other articles." *Pollard Bearings Corp. v. United States*, 511 F.2d 568, 571, 62 CCPA 61, 64, C.A.D. 1146 (1975) (quoting *United States v. Flex Track Equipment Ltd.*, 458 F.2d 148, 59 CCPA 97, C.A.D. 1046 (1972)).

Pharmacia's expert witness testified that the kit contains two components necessary to conduct the test, the radioactive element and the antibody. He admitted that the antibody determines the character of the test, and that the test cannot measure anything without the antibody.

Judge Watson found from the testimony and exhibits that two components, the antibody and the standard, were at least as important to the test as the radioactive element. This court will not reverse on questions of fact unless the findings are clearly contrary to the weight of the evidence. *Pollard Bearings, supra, United States v. F. W. Myers & Co.*, 45 CCPA 48, 52, C.A.D. 671 (1958). Far from any question of contrariness to the weight of the evidence here, Judge Watson's finding that other components are as important as the radioactive component is amply supported by the record. In view of the importance of its other components, it is apparent that the kit is more than a radioactive compound.

Argument (3) of the United States is also correct. The imported kit, consisting of a number of vials, does not meet the definition of "compound" in Schedule 4, headnote 2(a). It is not a "substance occurring naturally or produced artificially by the reaction of two or more ingredients."

Hence, classification of the imported kits under 494.50 would be improper whether they be viewed as more than "usefully radioactive compounds" or as failing to meet the definition of "compound."

Treatment of the kit as a radioactive compound is of no moment here. Rules and regulations governing storage, handling, and use of radioactive materials were developed to protect the public safety, not as guidance to customs classification.

The judgment of the Customs Court is *affirmed.*

---

nite proportions does not in itself affect the classification of such product as a mixture.
(b) The term "mixtures", as used in this schedule, includes solutions, except solutions defined as compounds in headnote 2(b) of this schedule.

**4.** The authorities cited on appeal by Pharmacia were either fully distinguished by Judge Watson or are directed to a question not at issue on appeal (criteria for determining classification of related items as entireties).